DICKINSON WRIGHT PLLC
Michael N. Feder
Nevada Bar No. 7332
Gabriel A. Blumberg
Nevada Bar No. 12332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169-0965
Tel: 702-550-4400
Fax: 844-670-6009
mfeder@dickinson-wright.com
gblumberg@dickinson-wright.com

ARNOLD & PORTER KAYE SCHOLER LLP
David B. Schwartz (*pro hac vice submitted)*
Jami Vibbert (*pro hac vice submitted* )
250 West 55th Street
New York, NY 10019-9710
Tel: 212-836-8000
Fax: 212-836-8689
david.schwartz@arnoldporter.com
jami.vibbert@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Daniel E. Raymond (*pro hac vice submitted)*
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: 312-583-2379
Fax: 312-583-2360
daniel.raymond@arnoldporter.com

*Attorneys for Defendants Mayne Pharma Commercial LLC, TherapeuticsMD, Inc., and DPT Laboratories, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

N.O. and H.H., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MAYNE PHARMA COMMERCIAL LLC, THERAPEUTICSMD, INC., DPT LABORATORIES, LTD., and MITHRA PHARMACEUTICALS SA,

Defendants.

Case No. 2:25-cv-02593-CDS-DJA

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS


MEMORANDUM OF POINT AND AUTHORITIES ........................................................1
FACTUAL BACKGROUND ........................................................2
LEGAL STANDARD ........................................................3
ARGUMENT ........................................................4
I. ALL CLAIMS AGAINST THERAPEUTICSMD AND DPT SHOULD BE DISMISSED BECAUSE THEY HAVE NO ALLEGED ROLE IN OPERATING THE WEBSITES AT ISSUE IN THIS CASE ........................................................4
II. PLAINTIFFS' ECPA CLAIM (COUNT VII) SHOULD BE DISMISSED ........................................................5
A. Mayne Was a Party to the Communications, Which Bars Plaintiffs' Claim ........................................................5
B. The Crime/Tort Exception Does Not Apply Because Plaintiffs Have Not Alleged that Defendants Intercepted Communications for the Purpose of Committing a Separate Crime or Tort. ........................................................6
C. HIPAA Cannot Supply a Predicate Crime Because Defendants Are Not Covered Entities and the Data at Issue Is Not Individually Identifiable Health Information. ........................................................8
D. Plaintiffs Do Not (And Cannot) Allege Interception of "Contents" of Communications ........................................................11
III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS I–VI) SHOULD ALL BE DISMISSED ........................................................12
A. Plaintiffs Did Not Transmit Any Sensitive Information ........................................................13
B. Plaintiffs Have Not Alleged Cognizable Injuries or Damages ........................................................13
C. Plaintiffs' Generic "Invasion of Privacy" Claim (Count I) Fails Whether Construed as Intrusion Upon Seclusion or Public Disclosure of Private Facts ........................................................14
1. Intrusion Upon Seclusion ........................................................ 15
2. Public Disclosure of Private Facts ........................................................ 17
D. Plaintiffs' Breach of Confidence Claim (Count II) Fails Because No Confidential Relationship Exists ........................................................18
E. Plaintiffs' Breach of Fiduciary Duty Claim (Count III) Fails Because No Fiduciary Relationship Exists. ........................................................19
F. Plaintiffs' Negligence Claim (Count IV) Is Barred by the Economic Loss Doctrine and Fails for Other Reasons ........................................................21
G. Plaintiffs' Breach of Implied Contract Claim (Count V) Fails Because No Contract Exists ........................................................23
H. Plaintiffs' Unjust Enrichment Claim (Count VI) Fails Because Plaintiffs Conferred No Benefit ........................................................24
CONCLUSION ........................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L. v. MannKind Corp.*, No. 2:25-cv-04903-JJT (D. Ariz.) ........ 1

*Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 10, 13, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3, 4

*Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371 (M.D. Fla. 2009) ........ 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Burns v. Erving*, 810 F. Supp. 2d 1167 (D. Nev. 2011) ........ 19

*Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, 175 A.3d 1 (Conn. 2018) ........ 19

*Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374 (Fla. 1989) ........ 17

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ........ 15

*City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134 (Nev. 1997) ........ 15

*Culhane v. Culhane*, 969 F. Supp. 2d 210 (D. Conn. 2013) ........ 20

*DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314 (M.D. Fla. 2024) ........ 14

*Doe v. Genesis Health Sys.*, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ........ 8

*Foncello v. Amorossi*, 284 Conn. 225 (2007) ........ 17

*Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111 (Nev. 2006) ........ 12

*Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732 (D. Mass. June 24, 2025) ........ 7, 8

*Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 17

*Horner v. Bagnell*, 154 A.3d 975 (Conn. 2017) ........ 24

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243 (M.D. Fla. 2019) ........ 14

*In re Zappos.com, Inc.*, 2013 WL 4830497 (D. Nev. Sept. 9, 2013) ........ 21

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 11, 12

*Jimenez v. ViaCord, LLC*, 2022 WL 4271337 (S.D. Fla. Sept. 15, 2022) ........ 23

*Karwowski v. Gen Digit., Inc.*, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) .................................6
*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................8
*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) .......................................................4
*McDermott v. State*, 113 A.3d 419 (Conn. 2015) ..............................................................22
*Mikulsky v. Bloomingdale's, LLC*, 2024 WL 3091395 (S.D. Cal. May 14, 2024), *aff'd*, 2025 WL 1718225 (9th Cir. June 20, 2025) ..................................................................16, 17
*Montesano v. Donrey Media Grp.*, 668 P.2d 1081 (Nev. 1983)...................................................17
*Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683 (Nev. 2021) ..........................................24
*Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024), *on reconsideration*, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025)....................6, 7, 8, 11, 24
*Oakes v. Nationstar Mortg. LLC*, 2025 WL 2709148 (Conn. Super. Ct. Sept. 15, 2025)............23
*Okash v. Essentia Health*, 2025 WL 642913 (D. Minn. Feb. 27, 2025)....................................7, 8
*On Demand Direct Response, LLC v. McCart-Pollack*, 2016 WL 5796858 (D. Nev. Sept. 30, 2016) ...........................................................................................................20
*PETA v. Berosini, Ltd.*, 895 P.2d 1269 (Nev. 1995), *holding modified on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134 (Nev. 1997) ....15
*PharMerica Mountain, LLC v. RCSRP Corp.*, 2021 WL 982314 (D. Nev. Mar. 16, 2021) .........23
*Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095 (Fla. 2022)....................................................24
*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) .................6, 8
*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......................................................15, 16
*Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ..............................................................................14
*Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 203 A.3d 1224 (Conn. 2019)........21
*Sadler v. PacifiCare of Nev.*, 340 P.3d 1264 (Nev. 2014).........................................................22
*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .................................................3
*Stephens v. Availity, L.L.C.*, 2019 WL 13041330 (M.D. Fla. Oct. 1, 2019)...........................19, 20

*Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200 (9th Cir. 1999) ......6

*T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ......6, 22

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81 (Nev. 2009) ......21

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) ......16

*Weston v. Lefiti*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) ......6

*Williams v. Davis*, 974 So. 2d 1052 (Fla. 2007) ......22

*Williams v. TMC Health*, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ......23

*Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ......10, 13

*W.W. v. Orlando Health, Inc.*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ......15, 16

**Statutes**

18 U.S.C. § 2510(4) ......11

18 U.S.C. § 2510(8) ......11

18 U.S.C. § 2511(1)(a) ......5

18 U.S.C. § 2511(1)(c) ......5

18 U.S.C. § 2511(2)(d) ......5, 6, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ......1, 3

**Regulations**

45 C.F.R. § 160.103 ......9, 10

**Other Authorities**

65 Fed. Reg. 82,462 (Dec. 28, 2000) ......9

Restatement (Second) of Conflict of Laws § 145 ......12

Restatement (Second) of Torts § 652D ......17, 18

U.S. Dep't of Health & Human Servs., Summary of the HIPAA Privacy Rule, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html ...........9

Defendants Mayne Pharma Commercial LLC ("Mayne"), TherapeuticsMD, Inc. ("TherapeuticsMD"), and DPT Laboratories, Ltd. ("DPT") (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court for an order dismissing Plaintiffs' Complaint with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is supported by the following Memorandum of Points and Authorities, the pleadings and papers on file, and any oral argument the Court allows at hearing of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case fails for a simple reason: Plaintiffs never transmitted any personal or health information to Defendants. They allege only that they visited two publicly accessible websites and downloaded free savings cards. This required no registration, no log in, no input of personal data, no disclosure of medical information, and no verification whatsoever. In fact, Defendants would not know who Plaintiffs are or their medical conditions if they did not bring this case and disclose this information in the Complaint. Based on this, Plaintiffs attempt to bring a sweeping privacy class action targeting routine website analytics tools used across the internet.

The Complaint is a textbook example of a recycled, boilerplate pleading. It asserts identical allegations across nine pharmaceutical websites and multiple defendants—even though Plaintiffs allege that they visited only ***two*** of the nine websites, and all but one of the defendants are alleged to be solely drug manufacturers with no alleged role in operating the websites at issue in this case. The Complaint so transparently recycles allegations that it still refers to an "Afrezza Website," which is a product and website not involved in this case.[1] Compl. ¶ 21.

The Complaint fails at every step, compelling dismissal as a matter of law. *First*, Plaintiffs do not allege that TherapeuticsMD or DPT owned, operated, or otherwise controlled the websites at issue. The only specific allegation as to these two defendants is that they manufacture some of

[1] This appears to be a copy-paste error from a recent complaint filed against several pharmaceutical companies in another federal court—which contains ***verbatim*** allegations. *See A.L. v. MannKind Corp.*, No. 2:25-cv-04903-JJT (D. Ariz.) (ECF No. 1).

the drug products. As a result, all claims against TherapeuticsMD and DPT fail and should be dismissed. *Second*, Plaintiffs' sole federal claim under the Electronic Communications Privacy Act ("ECPA") fails because Mayne was a party to the communications and could not have "intercepted" the alleged communications, the crime/tort exception does not apply, and Mayne did not intercept any "contents" of Plaintiffs' communications. *Third*, each of Plaintiffs' common law claims founders on the same bedrock deficiency: Plaintiffs never transmitted any sensitive health information through the websites, Plaintiffs have not alleged any cognizable injury or damages, and Plaintiffs do not plausibly allege the requisite elements of the asserted common law claims. This Court should dismiss the Complaint in its entirety and with prejudice.

**FACTUAL BACKGROUND**

Mayne is a pharmaceutical company that markets various branded pharmaceutical products. Compl. ¶ 3. Mayne operates publicly accessible websites for several of its pharmaceutical brands, including websites for Doryx (doryx.com), Imvexxy (imvexxy.com), and others. Compl. ¶ 4. These are informational websites, available to the general public, that provide product information and allow any visitor (whether a patient or not) to download cost-savings or copay cards for the relevant products.

Critically, there is no allegation that the Doryx and Imvexxy websites—the only two sites any Plaintiff alleges that they visited—require visitors to register, create an account, log in, enter personal information, disclose a medical condition, confirm a prescription, or undergo any verification process in order to access the site or download a savings card. Any person—whether a patient, a caregiver, a healthcare professional, or a casual browser—can visit these websites and download a savings card with a single click, without providing any identifying or health-related information whatsoever.

TherapeuticsMD and DPT are alleged to be pharmaceutical manufacturers. TherapeuticsMD is alleged to manufacture Annovera, Bijuva, and Imvexxy. Compl. ¶ 4. DPT is

alleged to manufacture Rhofade. Compl. ¶ 4. Neither TherapeuticsMD nor DPT is alleged to own, operate, maintain, or control any of the pharmaceutical websites identified in the Complaint.

Plaintiff N.O. is a Connecticut resident who alleges that she visited the Doryx website in or around May 2025 and downloaded a savings card. Compl. ¶¶ 16–18. Plaintiff H.H. is a Florida resident who alleges that she visited the Imvexxy website in or around May 2025 and downloaded a savings card. Compl. ¶¶ 23–25. Neither Plaintiff alleges that she entered any personal information, medical history, prescription information, or identifying data into either website. Neither Plaintiff alleges that she visited any of the other seven pharmaceutical websites identified in the Complaint.

Like the vast majority of commercial websites, the pharmaceutical websites at issue use standard, widely available analytics tools—including Google Analytics—to understand website traffic and usage patterns. These tools are used by millions of websites and collect routine technical data such as page URLs visited, click events, device type, browser version, screen resolution, and analytics identifiers. Compl. Figs. 5, 6. The Complaint does not allege that any of these standard data transmissions included Plaintiffs' names, addresses, medical records, diagnoses, prescription information, or any other personal health data.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," nor "unwarranted deductions of fact." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, 990 (9th Cir. 2001) (internal citations omitted).

## ARGUMENT

### I. ALL CLAIMS AGAINST THERAPEUTICSMD AND DPT SHOULD BE DISMISSED BECAUSE THEY HAVE NO ALLEGED ROLE IN OPERATING THE WEBSITES AT ISSUE IN THIS CASE

The Complaint's theory of liability centers on the use of tracking tools on certain pharmaceutical websites. Compl. ¶¶ 53, 69–70, 91. But the Complaint identifies TherapeuticsMD and DPT solely as drug manufacturers. Compl. ¶¶ 4, 31–32. Plaintiffs do not allege that TherapeuticsMD or DPT owned, operated, controlled, or maintained any of the pharmaceutical websites. Nor do Plaintiffs allege that TherapeuticsMD or DPT selected, installed, configured, or monitored any tracking tools on any website.[2] And Plaintiffs do not allege that they communicated with, transmitted data to, or interacted in any way with TherapeuticsMD or DPT.

The Complaint contains no factual allegations establishing any legal basis for imputing Mayne's website operations to TherapeuticsMD. The bare fact that TherapeuticsMD allegedly manufactured the drug Imvexxy does not make it liable for the website. The deficiency is even more stark for DPT. DPT is identified as the manufacturer of Rhofade, whose website is rhofade.com. Compl. ¶¶ 4, 32. But neither Plaintiff N.O. nor Plaintiff H.H. alleges that she ever visited or interacted in any way with rhofade.com. Compl. ¶¶ 16–29. DPT thus has no connection—direct or indirect—to any Plaintiffs' alleged experience on any website. There is no set of facts that Plaintiffs could prove consistent with the Complaint that would establish DPT's liability for any injury that any Plaintiff allegedly suffered.

Every claim therefore fails as to TherapeuticsMD and DPT because Plaintiffs do not allege any actions by those defendants. Without a pleaded communication to, disclosure by, or

---

[2] The Complaint's broader references to "Defendants" are conclusory group-pleading assertions that do not supply any particularized factual basis for attributing website operations or tracking tool deployment to TherapeuticsMD or DPT. Compl. ¶ 11 (referring to "Defendants" installing tracking tools "on their websites"); ¶ 53 ("Defendants installed the Tracking Tools."); ¶ 70 ("Defendants intentionally configured the Tracking Tools."); *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008) (holding that under *Twombly*, plaintiffs must plead "who, did what, to whom (or with whom), where, and when" to give each defendant fair notice of the claims against it).

relationship with those defendants, Plaintiffs cannot plausibly state any statutory or common-law claim against them. All claims against TherapeuticsMD and DPT should therefore be dismissed with prejudice.

## II. PLAINTIFFS' ECPA CLAIM (COUNT VII) SHOULD BE DISMISSED

Plaintiffs' claim for a violation of the ECPA requires a showing that Defendants intentionally intercepted or endeavored to intercept a wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a), (5)(a)(ii). Likewise, liability attaches only where a person intentionally discloses or uses, or endeavors to disclose or use, the contents of an intercepted communication. 18 U.S.C. § 2511(1)(c), (d).

### A. Mayne Was a Party to the Communications, Which Bars Plaintiffs' Claim

The ECPA exempts a party to the communication from liability. 18 U.S.C. § 2511(2)(d) ("[i]t shall not be unlawful . . . for a person . . . to intercept" an electronic communication "where such person is a party to the communication"). The rationale is straightforward: a party to a conversation cannot "eavesdrop" on its own conversation. When a user visits a website, the user's browser sends HTTP requests to the website's server, and the server sends back responses. The website operator is therefore the intended recipient of—and a party to—every communication that occurs on its own website.

Mayne cannot then, as a matter of law, be liable under the ECPA for "intercepting" Plaintiffs' purported communications on the websites they actually visited because Plaintiffs were communicating directly with Mayne.[3] The Complaint is clear on this point. Mayne operates the Doryx and Imvexxy websites. *See* Compl. ¶ 4 ("Mayne maintains consumer-directed marketing websites for [the] various pharmaceutical products" at issue in this case). As such, when Plaintiffs visited those websites, they were communicating directly with Mayne. Courts across the country have recognized this principle in the pixel-tracking context and dismissed ECPA claims on this

[3] Notably, the other defendants could not have intercepted anything because they have no alleged connection to the websites visited by the Plaintiffs as described above in Section I.

basis. *See, e.g.*, *Karwowski v. Gen Digit., Inc.*, 2025 WL 3002610, at *1 (9th Cir. Oct. 27, 2025) (affirming dismissal of ECPA claim based upon defendant's status as a party to the communications); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. May 13, 2024) (dismissing ECPA claim and holding "[t]o the extent that Plaintiff alleges that Defendant surreptitiously recorded its own communications with Plaintiff, the Court finds that the one-party consent exemption applies."), *on reconsideration*, 2025 WL 692097, at *12–13 (W.D. Wash. Mar. 4, 2025) (dismissing ECPA claim with prejudice); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (collecting cases and holding that "the weight of persuasive authority in similar pixel tracking cases supports" position that defendant "could not have intercepted the same transmission it received on its website"). Because Mayne was a party to the communications from Plaintiffs, Mayne cannot be liable under the ECPA, and this Court should dismiss the ECPA claim with prejudice.

### B. The Crime/Tort Exception Does Not Apply Because Plaintiffs Have Not Alleged that Defendants Intercepted Communications for the Purpose of Committing a Separate Crime or Tort.

Recognizing this, Plaintiffs seek shelter in the "crime/tort exception," but that exception plainly does not apply. Where applicable, the crime/tort exception permits a wiretap claim to proceed against a party to a communication if the interception was done "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This exception is narrow. The Ninth Circuit has explained that "[t]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original)); *Weston v. Lefiti*, 2024 WL 4579237, at *1 (9th Cir. Oct. 25, 2024) (same). In other words, Plaintiffs must allege a tortious or criminal ***use*** of the acquired communications that is ***separate from*** the act of intercepting the communications. If the alleged "tort" is simply the

interception and transmission itself, the exception collapses into the rule and the one-party consent provision is rendered meaningless.

Multiple courts addressing materially analogous pixel-tracking claims have applied this principle to dismiss ECPA claims. In *Nienaber*, the court dismissed with prejudice an ECPA claim brought by a hospital patient who alleged that the hospital's website transmitted her health information to Meta and Google through tracking pixels. 2025 WL 692097, at *12–13. The court held that "Plaintiff must allege a tortious or criminal use of the acquired communications *separate* from their recording, interception, or transmission for the tortious or criminal-act exception to apply." *Id*. at *13 (emphasis original). The court found that the plaintiff's own allegations—that the hospital installed tracking tools for marketing benefits—demonstrated a "non-criminal, non-tortious purpose" for the interception. *Id*. The court reached this conclusion even though the defendant was an actual healthcare provider with an actual patient—facts far more favorable to the plaintiff than those present here, where Defendants are alleged to be pharmaceutical manufacturers and Plaintiffs are anonymous website visitors.

Other courts have reached the same conclusion. In *Okash v. Essentia Health*, the court dismissed an ECPA claim with prejudice, holding that the alleged torts cannot be the basis for the crime/tort exception when they are "with the initial interception itself"—that is, when there is no separation between the act of intercepting and the alleged wrongful conduct. 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025). In *Goulart v. Cape Cod Healthcare, Inc.*, the court dismissed an ECPA claim because the plaintiff failed to allege facts showing that the defendant's primary motivation for installing tracking technology was to commit a crime or tort, as opposed to pursuing commercial gain or marketing benefits. 2025 WL 1745732, at *4 (D. Mass. June 24, 2025).

The Complaint here suffers from the same fatal deficiency. There is no separation between the act of intercepting and the alleged wrongful conduct. Plaintiffs' own Complaint confirms this: every predicate crime or tort Plaintiffs invoke—invasion of privacy, breach of confidence, breach of fiduciary duty, and violations of HIPAA and state data privacy statutes—is simply a

recharacterization of the interception and disclosure itself, not an independent use of the intercepted communications. Compl. ¶¶ 229, 232. In other words, Plaintiffs are not alleging that Defendants intercepted the communications and then *used* them to commit a separate tort—they are alleging that the interception *was* the tort. That is precisely the circular reasoning that *Newman*, *Nienaber*, *Okash*, and *Goulart* hold is insufficient.

Additionally, the alleged purpose for the purported interception was marketing benefits. Specifically, Plaintiffs allege that Defendants installed tracking tools to "prioritize their marketing efforts and profits over their patients' privacy." Compl. ¶ 11. Plaintiffs further allege that Defendants received "advanced advertising services and cost-effective marketing" in exchange for the data collection. Compl. ¶ 100. These allegations describe a commercial purpose—not a criminal or tortious one. A desire to leverage analytics for marketing is the reason every commercial website installs online tracking tools. It is not a criminal or tortious intent. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing ECPA claim because defendant's desire to "make money" is not a tortious or criminal intent); *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim because defendant was alleged to have used online "trackers" for its "marketing and advertising purposes" is not a tortious or criminal intent).

**C. HIPAA Cannot Supply a Predicate Crime Because Defendants Are Not Covered Entities and the Data at Issue Is Not Individually Identifiable Health Information.**

Plaintiffs' attempt to invoke the crime/tort exception rests primarily on the assertion that Defendants violated HIPAA by disclosing "individually identifiable health information" ("IIHI") to third parties.[4] Compl. ¶ 232(d). But HIPAA has nothing to do with this case because none of the Defendants are HIPAA regulated entities. HIPAA applies only to "covered entities" and their

[4] Each tort that Plaintiffs cite as a predicate for the crime/tort exception—invasion of privacy, breach of confidence, breach of fiduciary duty, and the state data privacy statutes (Compl. ¶ 232)—fails independently for the reasons discussed in Section III below.

business associates, which are limited to (1) health care providers who conduct certain standard electronic transactions, (2) health plans, and (3) health care clearinghouses. 45 C.F.R. § 160.103. Defendants are pharmaceutical manufacturers, not "covered entities." Plaintiffs' allegation that Defendants are covered entities rests upon a cherry-picked quotation from Department of Health and Human Services ("HHS") guidance. Compl. ¶¶ 112-113. But that HHS guidance makes clear that "drug, biologics, and device manufacturers are ***not*** health care providers simply by virtue of their manufacturing activities." 65 Fed. Reg. 82,462, 82,569 (Dec. 28, 2000) (emphasis added). That alone contradicts and renders implausible Plaintiffs' allegations with respect to TherapeuticsMD and DPT, who are alleged to be manufacturers without any role in the operation of the websites at issue in this case. As for Mayne, the very next sentence following Plaintiffs' cherry-picked quotation reads: "The pharmaceutical manufacturer that is a health care provider is only a covered entity, however, if it conducts standard transactions." *Id*. Plaintiffs do not allege that Mayne conducts "standard transactions" within the scope of HIPAA. 45 C.F.R. § 160.103; *see also* 65 Fed. Reg. 82,462, 82,567 ("[O]ur jurisdiction under [HIPAA] is limited to health plans, health care clearinghouses, and health care providers who transmit any health information electronically in connection with any of the standard financial or administrative transactions in section 1173(a)(1) of HIPAA."); U.S. Dep't of Health & Human Servs., Summary of the HIPAA Privacy Rule, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html#who (defining which health care providers are covered entities, stating "[u]sing electronic technology, such as email, does not mean a health care provider is a covered entity; the transmission must be in connection with a standard transaction"). Because Defendants are not HIPAA regulated entities, they could not have possibly violated HIPAA and HIPAA cannot serve as a predicate crime or tort under § 2511(2)(d).

Even if HIPAA applied to Defendants—which it does not—the data allegedly collected from the websites does not constitute IIHI, which is required to fit within the crime/tort exception. IIHI is defined as information that (1) is "created or received by a health care provider"; (2) "relates

to the . . . physical or mental health or condition of an individual"; and (3) "identifies the individual" or provides "a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103. The pharmaceutical websites at issue are publicly accessible; they are not portals for receiving or creating health information. Anyone—regardless of whether they have a prescription, a medical condition, or any connection to the drug—can visit doryx.com or imvexxy.com and download a savings card without providing any information (much less medical information) about themselves. The act of visiting a public pharmaceutical website does not reveal whether the visitor is a patient, a caregiver researching options for a family member, a healthcare provider comparing medications, a journalist investigating the pharmaceutical industry, or simply someone who clicked a link out of curiosity.

*American Hospital Association v. Becerra* addressed this precise issue. 738 F. Supp. 3d 780, 803 (N.D. Tex. June 20, 2024). There, the court struck down an HHS guidance bulletin that sought to treat metadata from visits to hospital webpages as IIHI. The court explained: "Without knowing information that's never received [by the website owner]—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI." *Id.*; *see also*, *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *2 (S.D. Cal. Nov. 21, 2025) ("The mere fact that Plaintiff used Defendant's website does not constitute PHI because it does not necessarily reveal any information related to her healthcare, conditions, or patient status."). The same reasoning applies with even greater force here, because these are pharmaceutical informational websites—not hospital patient portals—and the visitors are anonymous members of the general public, not identified patients.

The network transmissions depicted in the Complaint's own screenshots confirm this analysis. Figures 5 (Doryx) and 6 (Imvexxy) show standard Google Analytics parameters: page URLs, click event names (e.g., "file_download"), device metadata (browser type, screen resolution, operating system), and analytics identifiers (the "cid" and "sid" cookies). Compl. Figs. 5, 6. As is plainly clear from the pleadings, none of these parameters contains a visitor's name,

date of birth, medical record number, diagnosis, prescription, or any other piece of information that could constitute IIHI.

Because the "crime/tort exception" does not apply, Plaintiffs' ECPA claim should be dismissed.

### D. Plaintiffs Do Not (And Cannot) Allege Interception of "Contents" of Communications

Even if the crime/tort exception applied—which it does not—the Court should still dismiss Plaintiffs' ECPA claim because Plaintiffs do not sufficiently allege that Defendants intercepted the "contents" of any communications. The ECPA defines an "intercept[ion]" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "[C]ontents," in turn, is defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

As a threshold matter, Plaintiffs allege visits to only two of the nine websites identified in the Complaint—the Doryx and Imvexxy websites. Compl. ¶¶ 18, 25. They do not allege that they visited or interacted with the remaining seven websites (Annovera, Bijuva, Sorilux, Nextstellis, Fabior, Lexette, and Rhofade), or that they suffered any injury arising from websites they never visited. Those websites, therefore, cannot support Plaintiffs' ECPA claim. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d 1072, 1083, 1094 (dismissing claim where complaint relied upon a hypothetical appointment-scheduling example because the plaintiff did not clearly allege that she used the site that way, did not say what information she entered, and did not tie her actual activities to the hypothetical example of wiretapping).

But, even for the Doryx and Imvexxy websites, the only two websites Plaintiffs allege they visited, their ECPA claim fails. The Ninth Circuit has drawn a clear line between "content," which concerns the substance of what is being communicated—and "record information," which concerns the existence, timing, or routing of the communication. *In re Zynga Priv. Litig.*, 750 F.3d

1098, 1106 (9th Cir. 2014) (holding "that under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication"). This distinction is dispositive here. The Doryx and Imvexxy websites are publicly accessible sites that allow ***any*** individual to download a savings card without any registration, application, enrollment, identification, or verification process. Plaintiffs did not need to—and do not allege that they did—type their names into a form, enter a prescription number, describe a medical condition, or transmit any personal information whatsoever. In fact, until they filed this lawsuit, Defendants had no idea of Plaintiffs' medical conditions. This is because Plaintiffs did not affirmatively communicate any personal or health information through the websites, and, as such, there was no "substance, purport, or meaning" to intercept. What the tracking tools captured was, at most, the fact that an anonymous visitor navigated to certain URLs and clicked a download link. Under *In re Zynga Privacy Litigation*, that is "record information," not "contents," 750 F.3d at 1106, and therefore the ECPA claim should be dismissed.

## III. PLAINTIFFS' COMMON LAW CLAIMS (COUNTS I–VI) SHOULD ALL BE DISMISSED

Plaintiff N.O. is a Connecticut resident whose sole alleged interaction with any Defendant was a visit to the Doryx website from Connecticut. Compl. ¶¶ 16–18. Plaintiff H.H. is a Florida resident whose sole alleged interaction with any Defendant was visiting the Imvexxy website from Florida. Compl. ¶¶ 23–25. Under Nevada's choice-of-law framework, which applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 145, *General Motors Corp. v. Eighth Judicial District Court*, 134 P.3d 111, 116 (Nev. 2006), Connecticut law governs N.O.'s state-law claims and Florida law governs H.H.'s state-law claims, because those are the states where the alleged injuries occurred, where the Plaintiffs reside, and where the relationship between the parties is centered. The Court need not resolve this question definitively,

however, because—as shown below—Plaintiffs' common law claims fail under Connecticut law, Florida law, and Nevada law alike.

**A. Plaintiffs Did Not Transmit Any Sensitive Information**

Every one of Plaintiffs' common law claims is built upon the conclusory allegation that Plaintiffs "transmitted" their "Sensitive Health Information" to Defendants through the pharmaceutical websites. Compl. ¶¶ 6, 19, 26. But as demonstrated above, *see supra* Section II(D), the Doryx and Imvexxy websites are publicly accessible informational sites that do not require visitors to register, log in, disclose a medical condition, or enter any personal information in order to download a savings card. The Complaint does not allege that either Plaintiff typed anything into any form field or interacted with any authenticated portal. Visiting a public website and clicking a download link does not "transmit" sensitive health information any more than picking up a coupon from a pharmacy rack communicates that the person has the condition the drug treats. *See Becerra*, 738 F. Supp. 3d at 803 (visiting a public healthcare webpage does not constitute protected health information because the website operator never learns the visitor's subjective reason for the visit); *Wright*, 2025 WL 3248749, at *2 ("The mere fact that Plaintiff used Defendant's website does not constitute PHI because it does not necessarily reveal any information related to her healthcare, conditions, or patient status."). Because no sensitive information was transmitted, the factual predicate for every common law claim collapses.

**B. Plaintiffs Have Not Alleged Cognizable Injuries or Damages**

Even setting aside the absence of any sensitive data transmission, Plaintiffs have not alleged cognizable injuries or damages sufficient to sustain any of their common law claims. Each claim requires proof of actual damages—and each claim fails because Plaintiffs' damage allegations are conclusory and speculative.

Plaintiffs recite a laundry list of purported harms—"invasion of medical privacy," "emotional distress," "diminution of value," and "loss of benefit of the bargain"—without any supporting factual allegations. Compl. ¶ 14. Neither Plaintiff alleges that she incurred any out-of-

pocket expense. Neither Plaintiff alleges a specific emotional harm—there are no allegations of anxiety, sleep disturbance, need for counseling, or any other concrete manifestation of distress. Neither Plaintiff explains what "benefit of the bargain" she lost, given that the savings cards are ***free***. And neither Plaintiff explains how the "value" of her information was "diminished": to allege diminution in value, a plaintiff must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233–34 (D. Nev. 2020); *see also In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1258 (M.D. Fla. 2019). Plaintiffs allege neither.

Courts have repeatedly held that these very categories of conclusory damages—lost time, emotional distress, risk of future harm, and diminution of value—are insufficient to state a claim. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021), *aff'g* 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020) ("[N]one of plaintiff's purported damages . . . are sufficient to plausibly allege a claim upon which relief can be granted."); *DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1322–28 (M.D. Fla. 2024) (similarly holding that plaintiff's purported damages—risk of future harm, diminution in value, emotional injury, and loss of benefit of the bargain—were insufficient to allege an injury). Plaintiffs' bare assertion that they "immediately began seeing targeted online advertisements" (Compl. ¶¶ 22, 29) does not constitute a cognizable injury—receiving advertisements is an ordinary incident of internet browsing, not a legally compensable harm.

### C. Plaintiffs' Generic "Invasion of Privacy" Claim (Count I) Fails Whether Construed as Intrusion Upon Seclusion or Public Disclosure of Private Facts

Count I asserts a generic "Common Law Invasion of Privacy" claim that blends some (but not all) elements of (a) intrusion upon seclusion and (b) public disclosure of private facts—two

distinct categories of invasion of privacy.[5] Compl. ¶¶ 162–173. Regardless of which category Plaintiffs intended to assert in the Complaint, the claim fails as a matter of law.

*1. Intrusion Upon Seclusion*

An invasion of privacy claim premised upon an intrusion upon seclusion theory requires (1) an intentional intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. *See, e.g.*, *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *8–12 (M.D. Fla. Mar. 6, 2025) (under Florida law, to make a claim for invasion of privacy using an "intrusion upon seclusion" theory, a plaintiff must show a "physical or electronic" intrusion into "a place in which there is a reasonable expectation of privacy" and the intrusion "must be highly offensive to a reasonable person"); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (under Connecticut law, to make a claim for invasion of privacy using an "intrusion upon seclusion" theory, a plaintiff must show an "intentional invasion upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person'"); *PETA v. Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995), *holding modified on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134 (Nev. 1997) (under Nevada law, a claim for intrusion upon seclusion requires "1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person"). The claim fails for several independent reasons.

*First*, Defendants did not "intrude" on anything. Intrusion upon seclusion presupposes that the defendant affirmatively reached into a space where the plaintiff had withdrawn from public view. Here, the opposite occurred: Plaintiffs voluntarily navigated to Defendants' own public websites and initiated every interaction they now challenge. Defendants did not access Plaintiffs'

[5]"[A]t common law an invasion of the right to privacy has traditionally encompassed four *distinct* torts: intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (internal citation omitted). In other words, "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms." *Id.*

private devices, medical records, or communications on any third-party platform. The tracking tools at issue observed activity that Plaintiffs chose to conduct on Defendants' own websites.

*Second*, even if Defendants did "intrude" (they did not)—it was not into a private place or a private communication. An intrusion upon seclusion theory requires that the plaintiff was in a space, physical or virtual, where she had withdrawn from the public and could reasonably expect to be left alone. A publicly accessible website, available to any person on the internet without any log in or authentication, is the antithesis of such a space. Plaintiffs were not communicating with their physicians through a secure patient portal. They were not entering sensitive medical data into a protected intake form. They were voluntarily browsing a public, consumer-facing website available to anyone with a web browser. Since Plaintiffs do not plausibly allege any seclusion, the claim fails. *Orlando Health, Inc.*, 2025 WL 722892, at *10 (dismissing intrusion claim in healthcare pixel-tracking case because browsing activity on a publicly available website does not constitute intrusion into "private quarters" under Florida law); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) (holding it is "not objectively reasonable to expect privacy" over communications on a public website).

*Third*, even if Plaintiffs could establish an intrusion into a private space, the alleged conduct is not "highly offensive" as a matter of law on the facts pled. The deployment of Google Analytics and other tracking technologies is standard commercial practice—these tools are present on the vast majority of websites across the internet. As such, Plaintiffs describe ordinary website analytics and tracking tools on open websites. Courts routinely dismiss invasion of privacy claims where the alleged "highly offensive" conduct involved collecting browsing habits and activity. *See, e.g.*, *Popa v. Microsoft Corp.*, 153 F.4th 784, 791–95 (9th Cir. Aug. 26, 2025) (affirming dismissal and comparing web-tracking analytics to "a store clerk's observing shoppers in order to identify aisles that are particularly popular"); *Mikulsky v. Bloomingdale's, LLC*, 2024 WL 3091395, at *4 (S.D. Cal. May 14, 2024) (holding plaintiff failed to plead a highly offensive

violation based on tracking on defendant's website, and that "[c]ourts have been unwilling to find a cognizable privacy interest in browsing data from users on Defendant's own website"), *aff'd dismissal of intrusion upon seclusion claim*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *7 (E.D. Cal. June 9, 2025) (dismissing intrusion upon seclusion claim in healthcare Meta Pixel tracking case because allegations regarding browsing activity on a publicly available hospital website were vague and did not demonstrate that browsing related to provision of healthcare or patient status).

*2. Public Disclosure of Private Facts*

To the extent Plaintiffs also assert a theory of public disclosure of private facts, that claim requires (1) publicity, meaning communication to the public at large; (2) concerning private facts about the plaintiff; (3) the disclosure of which would be highly offensive to a reasonable person; and (4) that are not of legitimate public concern. *See, e.g.*, *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) (adopting the Restatement (Second) of Torts § 652 and holding that the elements of public disclosure of private facts "can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern."); *Foncello v. Amorossi*, 284 Conn. 225, 230–31 (2007) (recognizing public disclosure of private facts under the Restatement (Second) of Torts § 652 framework, requiring publicity of private matters of a kind that "would be highly offensive to a reasonable person" and "not of legitimate public concern"); *Montesano v. Donrey Media Grp.*, 668 P.2d 1081, 1084 (Nev. 1983) (adopting the Restatement (Second) of Torts § 652 tort of "publicity given to private life" and applying its elements). This claim fails for multiple independent reasons.

*First*, there are no "private facts" to disclose. As demonstrated above, *see supra* Section III(A), Plaintiffs did not transmit any personal or health information through the websites. Visiting a public website and downloading a free savings card available to anyone—patients, caregivers, healthcare providers, and curious browsers alike—is not a "private fact." The act of clicking a publicly available download link reveals nothing about the visitor's health status, medical

condition, or prescription history. *See Becerra*, 738 F. Supp. 3d at 803 (the fact that a person visited a public healthcare webpage does not constitute individually identifiable health information because the website operator never learns "the visitor's subjective motive"). A fact that is equally consistent with a dozen innocent explanations—curiosity, research, caregiving, professional interest—is not a "private fact" within the meaning of the tort.

*Second*, there was no "publicity." The tort of public disclosure of private facts requires that private information be communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. The Complaint alleges that analytics data was transmitted to Google and Meta through automated tracking tools embedded in the websites. Compl. ¶¶ 6, 70. But the automated transmission of technical metadata—page URLs, click events, device type, and analytics identifiers—to two technology companies through standard analytics software is not "publicity" in any recognized sense. It is not a broadcast to the world; it is not a publication in a newspaper; it is not even a disclosure to an identifiable group of human beings. It is the routine, automated operation of commercial software tools used by millions of websites.

*Third*, even assuming *arguendo* that Plaintiffs could identify a private fact and establish publicity (which they cannot), the alleged disclosure is not "highly offensive to a reasonable person," as explained above in connection with Plaintiffs' intrusion upon seclusion theory.

Accordingly, Count I should be dismissed in its entirety.

### D. Plaintiffs' Breach of Confidence Claim (Count II) Fails Because No Confidential Relationship Exists

Count II fails because a breach of confidence requires a confidential relationship in which sensitive information was entrusted to the defendant. Plaintiffs, as anonymous visitors downloading a free coupon from a public website, have not plausibly pled either.

A breach of confidence claim requires the existence of a confidential relationship in which one party entrusted sensitive information to another under circumstances giving rise to a duty of

non-disclosure. *See Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, 175 A.3d 1, 17 (Conn. 2018) (holding that "a duty of confidentiality arises from the physician-patient relationship and that unauthorized disclosure of confidential information obtained in the course of that relationship for the purpose of treatment gives rise to a cause of action sounding in tort against the health care provider, unless the disclosure is otherwise allowed by law."); *Stephens v. Availity, L.L.C.*, 2019 WL 13041330, at *7 (M.D. Fla. Oct. 1, 2019) (a breach of confidence claim can only be established where it "involves some sort of confidential relationship between the parties" ); *Burns v. Erving*, 810 F. Supp. 2d 1167, 1172 (D. Nev. 2011) ("To support a claim for breach of confidence, the plaintiff must show: (1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." (internal citations omitted)).

No such relationship or disclosure is alleged here. Plaintiffs did not visit a physician's office, a patient portal, or an authenticated treatment platform. They visited informational websites that anyone with an internet connection can access operated by a pharmaceutical company and downloaded a free savings card. Moreover, because no personal or health information was exchanged through the websites (*see supra* Section III(A))—Plaintiffs did not "entrust" any "sensitive information" to Defendants—there was no confidence to breach. Accordingly, Count II fails and should be dismissed.

### E. Plaintiffs' Breach of Fiduciary Duty Claim (Count III) Fails Because No Fiduciary Relationship Exists.

Count III fails because no fiduciary relationship exists between a pharmaceutical company operating a public informational website and the anonymous visitors who browse it, and Plaintiffs do not allege any facts that could transform this arm's-length "interaction" into a relationship of trust, dependency, or special confidence.

A fiduciary duty arises only where one party undertakes to act primarily for another's benefit in a relationship marked by dependency, dominance, or special trust. *See Culhane v. Culhane*, 969 F. Supp. 2d 210, 225 (D. Conn. 2013) (under Connecticut law, a fiduciary relationship is "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . the superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him" (internal citations omitted)); *Stephens*, 2019 WL 13041330, at *6 (a fiduciary relationship exists where a plaintiff alleges "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party" (internal citations omitted)); *On Demand Direct Response, LLC v. McCart-Pollack*, 2016 WL 5796858, at *4 (D. Nev. Sept. 30, 2016) (a fiduciary relationship exists when "one party is bound to act for the benefit of the other party" imposing a "duty of utmost good faith" such as "insurers and insured, attorney and client, spouses, fiancés, corporate officers or directors and corporation" or other "confidential relationships" where "one party gains the confidence of the other and purports to act or advise with the other's interests in mind" (internal citations omitted)).

Plaintiffs plead nothing resembling such a relationship. The Complaint does not allege that Plaintiffs relied on Defendants for healthcare advice, that Defendants assumed a duty to protect Plaintiffs' interests, or that Defendants had any relationship with Plaintiffs at all beyond the fact that Plaintiffs happened to visit a public website and download a free savings card. The relationship between Defendants and Plaintiffs is, at most, a commercial one—and a commercial relationship does not give rise to fiduciary duties under any of the relevant states' laws. *See, e.g.*, *Stephens*, 2019 WL 13041330, at *6 ("[M]ere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship." (internal citations omitted)). Simply put, Plaintiffs do not and cannot plead that simply downloading a coupon from a public

brand website created a relationship of trust and confidence under which Defendants undertook to act primarily for Plaintiffs' benefit. Count III should therefore be dismissed.

### F. Plaintiffs' Negligence Claim (Count IV) Is Barred by the Economic Loss Doctrine and Fails for Other Reasons

Count IV fails because Plaintiffs' claimed harms (i.e., emotional distress, diminution in value, and loss of benefit of the bargain) are purely economic losses and therefore barred by the economic loss doctrine, and even if not barred Plaintiffs do not plausibly allege the core elements of a negligence claim.

Plaintiffs' negligence claim is barred by the economic loss doctrine under Connecticut and Nevada law.[6] Under Connecticut law, the "economic loss doctrine or rule, generally characterized, reflects the principle that a plaintiff cannot sue in tort for purely monetary loss unaccompanied by physical injury or property damage." *Raspberry Junction Holding, LLC v. Se. Connecticut Water Auth.*, 203 A.3d 1224, 1227 n.3 (Conn. 2019). Nevada law is clear that the economic loss doctrine provides "that unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses." *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (quoting *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009)). Plaintiffs do not allege any personal injury or property damage. Their claimed harms—emotional distress, diminution in value, and loss of benefit of the bargain—are purely economic losses that are not recoverable in negligence under any of these jurisdictions' laws.

Even if not barred, Plaintiffs have failed to plausibly allege the requisite elements of a negligence claim because they have not alleged that: (1) Defendants owed them a duty, (2) Defendants breached such a duty, and (3) their injuries were caused by Defendants' breach.

[6] Under Florida law, the economic loss doctrine "applies in two different circumstances: (1) 'when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract,' and (2) 'when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property.'" *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1380–81 (M.D. Fla. 2009) (internal citations omitted). Even if not barred by the economic loss doctrine, Plaintiffs' negligence claim under Florida law independently fails for additional reasons as explained below.

*See, e.g.*, *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007); *McDermott v. State*, 113 A.3d 419, 425 (Conn. 2015); *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1267 (Nev. 2014).

*First*, Plaintiffs do not plead any recognized legal duty. Plaintiffs do not identify any statute, regulation, contract, or common law principle that imposes a duty on a pharmaceutical manufacturer to refrain from using standard, commercially available website analytics tools on its public informational website. The Complaint gestures at HIPAA (Compl. ¶¶ 107–127), but as explained above in Section II(C), Defendants are not HIPAA regulated entities, and HIPAA does not create a private standard of care applicable to pharmaceutical informational websites. Nor do Plaintiffs allege that Defendants breached any such duty.

*Second*, Plaintiffs have not plausibly alleged proximate causation. Even if a duty existed and was breached (it was not), Plaintiffs must allege that their injuries were proximately caused by the breach. Plaintiffs' sole alleged "injury" is seeing targeted advertisements. Compl. ¶¶ 22, 29. But the Complaint does not allege any causal link between the specific data collected by the tracking tools on Defendants' websites and the specific advertisements Plaintiffs claim to have seen. Targeted advertising is driven by countless data points from across the internet—Plaintiffs do not and cannot allege that the advertisements they saw were caused by, rather than merely coincident with, their visits to Defendants' websites. *See Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *3 ("No facts are alleged that would explain how receiving targeted advertisements from Facebook and Piedmont would plausibly cause any of the Plaintiffs to suffer these damages. This is not a case where the Plaintiffs' personal information was stolen by criminal hackers with malicious intent. The Plaintiffs received targeted advertisements because they are Facebook users and have Facebook IDs.").

*Third*, for the reasons stated above, *see supra* Section III(B), Plaintiffs do not have any cognizable injuries to support their negligence claim.

Because Plaintiffs' negligence claim is barred by the economic loss doctrine, and otherwise fatally flawed for failure to plead the requisite elements, Count IV should be dismissed.

**G. Plaintiffs' Breach of Implied Contract Claim (Count V) Fails Because No Contract Exists**

Count V fails because no implied contract exists: Plaintiffs identify no promise, no consideration, and no meeting of the minds. Plaintiffs received no medical services, exchanged no personal information, and agreed to no definite terms concerning the use of analytics tools.

An implied-in-fact contract requires the same essential elements as an express contract: offer, acceptance, consideration, and a meeting of the minds. *See, e.g.*, *Oakes v. Nationstar Mortg. LLC*, 2025 WL 2709148, at *4 (Conn. Super. Ct. Sept. 15, 2025); *Jimenez v. ViaCord, LLC*, 2022 WL 4271337, at *6 (S.D. Fla. Sept. 15, 2022); *PharMerica Mountain, LLC v. RCSRP Corp.*, 2021 WL 982314, at *3 (D. Nev. Mar. 16, 2021). Here, the Complaint does not (and cannot) allege the existence of any contract between Plaintiffs and Defendants. Plaintiffs do not identify any privacy promise made to them, any definite term allegedly accepted by use of the website, or any consideration exchanged for a promise not to use commonplace analytics tools. Plaintiffs allege they exchanged their "Sensitive Health Information . . . in exchange for medical services" (Compl. ¶ 198), but they received no "medical services" from Defendants—they downloaded a free, publicly available savings card as a PDF. A free coupon that anyone can obtain does not constitute contractual consideration. And there was no "meeting of the minds" on any term whatsoever. Without any of these elements, there is no implied contract to breach. *See Williams v. TMC Health*, 2024 WL 4364150, at *8 (D. Ariz. Sept. 30, 2024) (rejecting an implied-contract theory based on use of a public healthcare website because the complaint alleged no mutual understanding that payment for care or website use purchased an absence of tracking technology). If an implied contract was not plausible on allegations involving actual healthcare services, it is not plausible here, where Plaintiffs allege only public website visits and free coupon downloads.

Therefore, Count V fails and should be dismissed.

### H. Plaintiffs' Unjust Enrichment Claim (Count VI) Fails Because Plaintiffs Conferred No Benefit

Count VI fails because Plaintiffs conferred no cognizable benefit on Defendants—the routine technical metadata automatically generated when any web browser communicates with any web server is not a "benefit" that Plaintiffs chose to confer, and Defendants' retention of it is not unjust as a matter of law.[7]

Unjust enrichment requires a cognizable benefit conferred on the defendant and retained under circumstances making retention inequitable. *See, e.g.*, *Horner v. Bagnell*, 154 A.3d 975, 983 (Conn. 2017); *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022); *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021). Here, Plaintiffs' theory is that they "conferred a monetary benefit on Defendants" by "provid[ing] their Sensitive Health Information to Defendants which Defendants then utilized for marketing and advertising purposes." Compl. ¶ 207. But as demonstrated above, Plaintiffs did not provide any sensitive health information to Defendants. Plaintiffs visited a public website and clicked a download link. They did not enter personal data, register an account, or communicate any information about their health conditions. The routine technical metadata captured by analytics tools—page URLs, click events, device type—is not a "benefit" that Plaintiffs "conferred" on Defendants; it is an automatic byproduct of how web browsers communicate with web servers. *See Nienaber*, 2024 WL 2133709, at *13–14 (dismissing unjust enrichment claim in pixel-tracking case because plaintiff failed to show that she conferred a concrete benefit or suffered a concrete detriment, or that the defendant's retention of any benefit would be unjust). Accordingly, Count VI fails and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice as to all Defendants.

---

[7] Defendant Mayne, the only defendant alleged to have any role in operating the websites at issue, did not retain this data. Nevertheless, Defendants assume the truth of Plaintiffs' well-pled allegations of fact for the purposes of this Motion to Dismiss.

Dated: March 23, 2026

DICKINSON WRIGHT PLLC

/s/ Michael N. Feder
Michael N. Feder
Nevada Bar No. 7332
Gabriel A. Blumberg
Nevada Bar No. 12332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Tel: 702-550-4400
Fax: 844-670-6009
Email: mfeder@dickinsonwright.com
Email: gblumberg@dickinsonwright.com

ARNOLD & PORTER KAYE SCHOLER LLP
David B. Schwartz (*pro hac vice submitted*)
Jami Vibbert (*pro hac vice submitted*)
250 West 55th Street
New York, NY 10019-9710
Tel: 212-836-8000
Fax: 212-836-8689
Email: david.schwartz@arnoldporter.com
Email: jami.vibbert@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Daniel E. Raymond (*pro hac vice submitted*)
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: 312-583-2379
Fax : 312-583-2360
Email: daniel.raymond@arnoldporter.com

*Attorneys for Defendants Mayne Pharma Commercial LLC, TherapeuticsMD, Inc., and DPT Laboratories, Ltd.*

## CERTIFICATE OF SERVICE

I certify that I am an employee of DICKINSON WRIGHT PLLC and that on March 23, 2026, pursuant to Federal Rule of Civil Procedure 5(b), I served a true and correct copy of **DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT** on the parties through the Court's CM/ECF e-filing system and via email to the following:

Sonjay C. Singh (*pro hac vice*)
Tyler James Bean (*pro hac vice)*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 212-532-1091
Email: ssingh@sirillp.com
Email: tbean@sirillp.com

Mona Amini
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, NV 89113
Tel: 800-400-6808
Fax: 800-520-5523
Email: mona@kazlg.com

*Attorneys for Plaintiffs N.O. and H.H.*

*/s/ Dianne M. Kelling*
An Employee of Dickinson Wright PLLC