Sonjay Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Telephone: (212) 532-1091
E-mail: ssingh@sirillp.com

Mona Amini, Esq.
Nevada Bar 15381
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: mona@kazlg.com

*Attorneys for Plaintiffs N.O. and H.H.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| N.O. and H.H., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYNE PHARMA COMMERCIAL LLC, THERAPEUTICSMD, INC., DPT LABORATRIES, LTD., and MITHRA PHARMACEUTICALS SA,<br><br>Defendants. | Case No. 2:25-cv-02593-CDS-DKA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. LEGAL STANDARD .......... 2

A. PLAINTIFFS' ECPA CLAIM IS SOUND .......... 2

i. Plaintiffs' Allegations Satisfy the Crime-Tort Exception .......... 2

ii. Plaintiffs' allege disclosure of the contents of their communications. .......... 9

B. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED. .......... 10

i. The Economic Loss Doctrine Does Not Bar Plaintiffs' Claim .......... 11

ii. Defendants had a Duty to Protect Plaintiffs' Sensitive Health Information .......... 11

iii. Defendants' Breach of Their Duty Caused Plaintiffs Cognizable Injury .......... 12

C. PLAINTIFFS' INVASION OF PRIVACY CLAIMS ARE WELL-PLED. .......... 14

i. Plaintiffs plausibly allege intrusion upon seclusion. .......... 14

ii. Defendants' use of surreptitious Tracking Tools constitutes an "intrusion." .......... 15

iii. Plaintiffs have a reasonable expectation of privacy in their Sensitive Health Information. .......... 16

iv. Defendants' unauthorized disclosures of Plaintiffs' Sensitive Health Information are "highly offensive." .......... 18

v. Plaintiffs plausibly allege public disclosure of private facts. .......... 19

D. PLAINTIFFS' BREACH OF CONFIDENCE AND BREACH OF FIDUCIARY DUTY CLAIMS ARE WELL-PLED. .......... 21

E. PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED. .......... 22

F. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL-PLED. .......... 23

IV. CONCLUSION .......... 24

**TABLE OF AUTHORITIES**

*Adair v. CIGNA Corp. Servs., LLC*,
2026 U.S. Dist. LEXIS 23288 (E.D. Pa. 2026) ........ 18

*Ames v. Caesars Ent. Corp.*,
2019 U.S. Dist. LEXIS 55302 (D. Nev. 2019) ........ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. 2024) ........ 7

*B.K. v. Eisenhower Med. Ctr.*,
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. 2024) ........ 7

*B.N. v. Or. Reprod. Med., LLC*,
2025 U.S. Dist. LEXIS 222638 (D. Or. 2025) ........ 8

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. 2024) ........ 20

*Castillo v. Costco Wholesale Corp.*,
*2024 U.S. Dist. LEXIS 207197 (W.D. Wash. 2024)* ........ passim

*Castillo v. Seagate Tech, LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. 2026) ........ 23

*Curd v. Mosaic Fertilizer, L.L.C.*,
39 So. 3d 1216 (Fla. 2010) ........ 10

*Doe v. Aetna Life Ins. Co.*,
2018 U.S. Dist. LEXIS 216447 (M.D. Fla. 2018) ........ 20

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024) ........ 24

*Doe v. Meta Platforms, Inc.,*
690 F.Supp.3d 1064 (N.D. Cal. 2023) ........ 9

*Doe v. Shady Grove Reprod. Sci. Ctr.,*
*P.C.*, 2025 U.S. Dist. LEXIS 192453 (D. Md 2025) ........ 16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 5, 7

*Gaige v. Exer Holding Co., LLC*,
U.S. Dist. LEXIS 17146 ........ 5

*Giles v. Gen. Motors Acceptance Corp.*,
494 F.3d 865 (9th Cir. 2007) .......... 21

*Harrill v. Emanuel Med. Ctr.*,
2025 U.S. Dist. LEXIS 109125 (E.D. Cal. 9, 2025) .......... 18

*I.T. v. ChoicePoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. 2025) .......... 4, 5, 7, 22

*In re Ambry Genetics Dta Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 23

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 10, 14, 19

*In re Grp. Health Plan Litig.,*
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 18

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 5, 9

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. 2024) .......... 4

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
2022 U.S. Dist. LEXIS 206552 (C.D. Cal.2022) .......... 23

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009) .......... 2

*Lau v. Gen. Digit. Inc.*,
2024 U.S. Dist. LEXIS 81310 (N.D. Cal. 2024) .......... 15

*Leasepartners Corp. v. Robert L. Brooks Tr.*,
942 P.2d 182 (Nev. 1997) .......... 24

*Lombino v. Bank of Am., N.A.*,
797 F. Supp. 2d 1078 (D. Nev. 2011) .......... 11

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. 2024) .......... 15

*Merluzzi v. Larson*,
96 Nev. 409, 610 P.2d 739 (Nev. 1980) .......... 11

*Mountain W. Helocoper, LLC v. Kaman Aerospace Corp.*,
310 F. Supp. 2d 459 (D. Conn. 2004) .......... 11

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 16

*W.W. v. Orlando Health, Inc.*,
2025 U.S. Dist. LEXIS 40038 (M.D. Fla. 2025) ........ 17

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 15

*Plaintiffs v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ........ 11, 12, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 18

*Pruchnicki v. Envision Healthcare Corp.*,
430 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd*, 845 Fed. App'x 613 (9th Cir. 2021) ........ 13

*R.S. v. Prime Healthcare Servs. Inc.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025) ........ 7, 9

*Riganian v. LiveRamp Holdings, Inc.*,
2025 U.S. Dist. LEXIS 138122 (N.D. Cal.2025) ........ 9

*Robertson v. Formation Nation*,
2025 U.S. Dist. LEXIS 213150 (D. Nev. 2025) ........ 23

*Ruiz v. Victory Properties, LLC*,
07 A.3d 381 (Conn. 2015) ........ 10

*Sanchez ex rel. Sanchez v. Wal-Mart Stores*, Inc.,
221 P.3d 1276 (Nev. 2009) ........ 10

*SBP Homes, LLC v. 84 Lumber Co.*,
384 So. 3d 241 (Fla. Dist. Ct. App. 2024) ........ 23

*Selby v. Sovrn Holdings, Inc.*,
2025 U.S. Dist. LEXIS 205538 (N.D. Cal. 2025) ........ 10

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 12

*Smith v. Findlay Auto., Inc.*,
2025 U.S. Dist. LEXIS 60934 (D. Nev. 2025) ........ 13

*Smith v. Rack Room Shoes, Inc.*,
2025 U.S. Dist. LEXIS 70510 (N.D. Cal. 2025) ........ 10

*Smith v. Recrion Corp.*,
91 Nev. 666, 541 P.2d 663 (Nev. 1975) ........ 23

*Stallone v. Farmers Grp., Inc.*,
2022 U.S. Dist. LEXIS 199845 (D. Nev.2022) .......... 14

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 20

*Stein v. Edward-Elmhurst Health*,
2026 U.S. Dist. LEXIS 43196 (N.D. Ill.2026) .......... 8

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .......... 7

*T.D. v. Piedmont Healthcare, Inc.*,
2024 U.S. Dist. LEXIS 154229 (N.D. Ga. 2024) .......... 12

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*,
206 P.3d 81 (Nev. 2009) .......... 11

*Town of New Hartford v. Connecticut Res. Recovery Auth.*,
291 Conn. 433, 451-52 (Conn. 2009) .......... 24

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. 2024) .......... 22

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) .......... 24

*Weston v. Lefiti*,
2024 U.S. App. LEXIS 27181 (9th Cir. 2024) .......... 7

*Williams v. Minneola*,
575 So. 2d 683 (Fla. Dist. Ct. App. 1991) .......... 20

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 10

## I. PRELIMINARY STATEMENT

Many Americans have difficulty affording their prescription medications. To ensure patients use their products, most pharmaceutical manufacturers offer a variety of programs they describe as financial assistance. However, studies show that these financial assistance programs are well-funded marketing operations, not charity. *See* ECF No. 1 (the "**Complaint**" or "**Compl**.") ¶¶ 4-5. Indeed, for over ten years, regulatory agencies and investigative journalists have raised the alarm over the surreptitious collection of medical data through pharmaceutical discount programs. *Id.* ¶ 12. Yet, Defendants Mayne Pharma Commercial LLC ("**Mayne**), TherapeuticsMD, Inc. ("**TherapeuticsMD**"), DPT Laboratories, Ltd. ("**DPT**"), and Mithra Pharmaceuticals SA ("**Mithra**" and collectively, "**Defendants**") persist in these practices.

Defendants run marketing programs through various consumer-facing websites (the "**Pharmaceutical Websites**") offering discount cards for some of their medications ("**Savings Cards**"). Plaintiffs N.O. and H.H. (collectively, "**Plaintiffs**") accessed two of the Pharmaceutical Websites to obtain Savings Cards in connection with their prescriptions for Doryx, to treat acne, and Imvexxy, to treat vaginal atrophy, respectively. *Id.* ¶¶ 17, 18, 24, 25. When they did so, Plaintiffs reasonably expected information pertaining to their medical conditions, prescriptions and medical expenses (collectively, the "**Sensitive Health Information**") to be held to the standard of confidentiality expected for such sensitive data. *Id.* ¶ 135. Unfortunately, it was not. Unbeknownst to Plaintiffs, Defendants installed surreptitious online surveillance (the "**Tracking Tools**") produced by Google and Facebook (the "**Tracking Tool Providers**") onto the Pharmaceutical Websites and, in exchange for advanced and marketing advertising services, allowed these internet behemoths to collect health information about their patients for use in their targeted advertising enterprise. *Id.* ¶¶ 6-10. The information collected and disclosed by the Tracking Tools included the fact that Plaintiffs enrolled in the savings programs for specific prescription medications and their medical conditions. *Id.* ¶¶ 19, 26. Further, Plaintiffs' Sensitive Health information was transmitted to each Tracking Tool Provider along with a "cookie identifier" which identified each Plaintiff through their corresponding Internet accounts (e.g., the transmissions made through the Google Tracking Tools included a Google identifier number corresponding to Plaintiffs' Google account). *Id.* ¶¶ 61-64.

In their Motion to Dismiss, ECF No. 28 (the "**Motion**" or "**Mot.**"), Defendants do not deny that they installed the Tracking Tools and configured them to transmit detailed information about Plaintiffs' use of the Pharmaceutical Websites. Instead, Defendants attempt to evade liability for these disclosures by mischaracterizing the nature of the information they collected and disclosed and by minimizing the privacy harms at stake. For these reasons, and as further explained herein, Defendants' Motion to Dismiss should be DENIED in its entirety.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. ARGUMENT

### A. PLAINTIFFS' ECPA CLAIM IS SOUND.

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiff's well-pled allegations are sufficient to invoke this exception.

#### i. Plaintiffs' Allegations Satisfy the Crime-Tort Exception

1. Defendants are HIPAA-covered Entities

Defendants do not dispute that they intentionally employed the Tracking Tools or that those

Tracking Tools intercepted Plaintiffs' Sensitive Health Information. Rather, the crux of Defendants' argument is that they are not covered entities under HIPAA, and therefore, they are not subject to the HIPAA provisions cited in the Complaint. Mot. 8-10. Defendants are wrong. Under 45 CFR § 160.103, a "covered entity" is any health plan, health care clearinghouse, or health care provider who transmits health information electronically in connection with HIPAA-covered transactions. A "health care provider" includes any entity who "furnishes, bills, or is paid for health care in the normal course of business." 45 CFR § 160.103. "Health care," in turn, means the "care, services, or supplies related to the health of an individual," including, but not limited to the "sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription." *Id.* Lastly, "transactions" under HIPAA refers to "the transmission of information between two parties to carry out financial or administrative activities related to healthcare." *Id.* CFR § 160.103 includes a ***non-exhaustive*** list of examples of HIPAA-covered transactions.

Defendants operate patient-facing programs that transmit Protected Health Information ("PHI") in standard transactions related to the furnishing of prescription medications as part of its pharmaceutical operations that generates millions of dollars in sales annually. *See* Compl. ¶¶ 3-5, 144. This supports a finding that Defendants are covered entities under HIPAA. While no court has addressed the question of whether pharmaceutical companies like Defendants are covered entities under HIPAA, the Department of Health and Human Services has explicitly advised that "a pharmaceutical manufacturer that provides support and guidance to doctors and patients regarding the proper use of their products is providing 'health care'" under the meaning of HIPAA and is thus a covered entity.[1] As the Complaint alleges, Defendants provide such support to patients through the Pharmaceutical Websites, including by providing detailed information on how to properly administer and calculate the dosages of their patients' prescription drugs, providing access to personalized "Patient Portals" that host extensive medical information and individualized prescription trackers, and making healthcare providers available to patients to serve as resources with regards to their medications. Compl. ¶ 113. Indeed, contrary to the representations in their Motion, Defendants

[1] *Response to Comments Received – General Provisions: Definitions - Covered Entity*, 65 FR 82569 (2000).

explicitly recognize that they are HIPAA-covered entities on the Pharmaceutical Websites, stating that that they "adhere[] to **applicable** privacy laws and regulations including the **Health Insurance Portability and Accountability Act of 1996 (HIPAA)**" in their online Privacy Notice. *See* Compl. ¶ 112. Defendants cannot reasonably claim that they are not regulated under HIPAA when the Pharmaceutical Websites inform Defendants' customers that HIPAA is an "applicable privacy law" governing Defendants' web properties.

2. Defendants' disclosure of Plaintiffs' Sensitive Health Information violated HIPAA, other data privacy statutes, and numerous common law protections.

***First***, under HIPAA, IIHI Individually Identifiable Health Information ("IIHI") includes any information that: (1) "is created and received by a health care provider[,]" (2) "relates to the present, past, or future physical or mental health or condition of an individual, [or] the provision of healthcare to an individual," which (i) "identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6). Numerous courts within this Circuit have found that the fact that an individual is prescribed a certain medication constitutes IIHI under analogous circumstances. *See Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *4 (D. Or. Nov. 14, 2024); *I.T. v. ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *22 (W.D. Wash. Aug. 29, 2025). Here, Plaintiffs allege that the information transmitted to Google through the Tracking Tools includes the fact that they downloaded co-pay cards for the Doryx and Imvexxy pharmaceutical products respectively. Compl. ¶¶ 19, 26, 76, 78. Specifically, Figure 5 shows that Google was informed that Plaintiff N.O. downloaded the savings card for "Doryx MPC (doxycycline hyclate delayed-release tablets)" from a webpage that specifically instructs": "***Patients***: Download your copay card today!" Compl. ¶ 76 (emphasis added). Likewise, Figure 6 shows that Google was informed that Plaintiff H.H. downloaded a savings card for "IMVEXXY (estradiol vaginal inserts)." *Id.* ¶ 78. As Doryx and Imvexxy are specifically prescribed to treat bacterial infection and vaginal atrophy respectively, the fact that Plaintiffs were prescribed these drugs inherently discloses their medical conditions as well. *See id.* ¶¶ 76-79. Moreover, despite Defendants' assertions to the contrary, Plaintiffs clearly allege

that their Sensitive Health Information was personally identifiable because it was "accompanied by specific lines of code linking the Sensitive Health Information provided by Plaintiff[s] and Class Members to their identities" including the "identifier numbers attached to Google's 'cid' and 'sid' cookies, which identify the user's Google account, as well as information commonly used to make a browser fingerprint, including the user's device information and language." *Id*. ¶¶ 77, 79. Such social media identifiers have been uniformly found to constitute personally identifiable information in analogous Tracking Tool litigation.[2]

In response, Defendants argue that Plaintiffs' Sensitive Health Information cannot constitute IIHI because it was collected from a public website rather than from a patient portal. This exact argument has been resoundingly rejected by Ninth Circuit courts. For example, in *Costco*, the plaintiffs alleged that the crime-tort exception applied because the defendant's use of tracking tools on its retail website to disclose their searches for specific pharmaceutical products violated HIPAA. 2024 U.S. Dist. LEXIS 207197, at *23-24. Like here, the *Costco* defendant rebutted this conclusion by arguing that plaintiffs only alleged tracking on its public-facing website, and did not allege that they had logged in or provided any identifying information in connection with their searches. *Id*. Yet, the *Costco* court concluded that the plaintiffs had properly alleged a violation of HIPAA because they alleged disclosure of their searches for "specific prescription drugs" rather than "general medical information." *Id*. Indeed, the Court noted, "'[a]n internet user might research medical information for reasons unrelated to the user's own health conditions. But an internet user is very unlikely to purchase [specific prescriptions] for reasons unrelated to the user's own health conditions.'" *Id*. (quoting *Walgreen*, 733 F. Supp. 3d at 893). Likewise, the court in *Walgreen* reached this same conclusion, finding that the defendant's disclosure of the fact that "plaintiffs purchased specific products to treat specific health conditions" stated a HIPAA violation sufficient to satisfy the crime-tort exception, even though the plaintiffs did not allege that they "submitted any personal health data to Walgreens"

[2] *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (a "Facebook ID identifies a Facebook user"); *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *8 (same with regards to Google identifiers); *Gaige v. Exer Holding Co., LLC*, U.S. Dist. LEXIS 17146, at *4 (C.D. Cal. Mar. 2, 2025) (same); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (same); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) (same).

or that "that they were signed into any type of private portal." 733 F. Supp. 3d at 891. The same reasoning applies here: while an internet user might research a pharmaceutical product for reasons "unrelated to their own health conditions," they are "very unlikely" to obtain a Savings Card to receive a discount on a pharmaceutical product that they are not prescribed. *Id.* at *893; *Costco*, 2024 U.S. Dist. LEXIS 207197, at *23.[3]

***Second***, in addition to HIPAA, Plaintiffs allege that Defendants' disclosures of their Sensitive Health Information violated the Connecticut Data Privacy Act ("CTDPA") and Texas Data Privacy and Security Act ("TDPSA"). *See* Compl. ¶¶ 128-134. Defendants make no attempt to dispute these allegations, nor are their arguments as to HIPAA applicable to these statutes which are not limited only to medical information.

***Third,*** aside from these statutory violations, Plaintiffs allege that Defendants' disclosure of their Sensitive Health Information was tortious under numerous common law causes of action, including invasion of privacy. *See generally*, Compl.

3. <u>Plaintiffs allege a criminal and/or tortious purpose separate from the predicate interception.</u>

To invoke the ECPA's crime-tort exception, Plaintiffs must allege that their Sensitive Health Information was "**intercepted** for the **purpose** of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.§ 2511(2)(d) (emphasis added). As one Ninth Circuit Court explains:

> In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

*Castillo*, 2024 U.S. Dist. LEXIS 207197, at *18-19; *see also R.S. v. Prime Healthcare Servs. Inc.*,

---

[3] *American Hospital Association v. Becerra*, 738 F. Supp. 780 (N.D. Texas 2024) is irrelevant here. *See* Mot. at 10. In *Becerra*, the Court invalidated a discrete portion of a particular HHS bulletin and noted that the rest of the HHS Bulletin remained unaffected by the Court's opinion. *Id.* at 807, n. 8. While portions of the HHS bulletin at issue in *Becerra* are instructive, Plaintiff's allegations do not rely on it. Rather, Plaintiff pleads that Defendant violated the HIPAA Privacy Rule by disclosing their Sensitive Health Information to third parties without their consent.

2025 U.S. Dist. LEXIS 6338, at *16 (C.D. Cal. Jan. 13, 2025) ("the violation stems from [Defendant]'s *intentional* disclosure of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [Defendant]'s *interception*") (quoting *Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181, at *5 (9th Cir. Oct. 25, 2024)). Consequently, Ninth Circuit courts routinely conclude "that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception" under analogous circumstances. *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *18 (crime-tort exception applied where the plaintiffs alleged that the defendants intercepted their information with the purpose of disclosing it in violation of HIPAA).[4] Plaintiffs' allegations thus satisfy the crime-tort exception by showing that Defendants intercepted their Sensitive Health Information with the purpose of disclosing it to unauthorized third parties in violation of HIPAA, the CTDPA, the TDPSA, and the causes of action asserted in the Complaint.

The cases cited by Defendants further support this conclusion. For example, in *Sussman v. ABC*, the Ninth Circuit found that illegally taped recordings made by an ABC journalist did not violate the Wiretap Act because while plaintiffs "argue[d] that the taping itself was tortious" they made no allegations that ABC's use of the recordings—airing the tapes on its broadcast station—was illegal. *Sussman*, 186 F.3d at 1202. The Ninth Circuit found that the crime-tort exception did not apply because "[w]here the **purpose** is not illegal or tortious, but the **means** are, the victims must seek redress elsewhere." *Id*., at 1202-03 (emphasis added). In contrast, Plaintiff alleges the exact opposite: not that the **means** of the interception were unlawful but rather that the **purpose** of the interception was unlawful. Indeed, had Defendants used Tracking Tools to collect Plaintiffs' Sensitive Health Information solely for Defendants' own records without disclosing the Sensitive Health Information to any third party, Plaintiffs would not have brought this action. A website operator's collection of

[4] *See also Tenet Healthcare*, 789 F. Supp. 3d at 849 (same); *Walgreen*, 733 F. Supp. 3d at 902 (denying motion to dismiss ECPA claim where plaintiffs' invasion of privacy claim was sufficiently pled); *Gaige*, 2025 U.S. Dist. LEXIS 17146, at *15 (finding the complaint sufficiently alleged an "illegitimate purpose that was at least a determining factor for defendant's actions" where plaintiff alleged violations of invasion of privacy"); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *16 (C.D. Cal. Feb. 1, 2024) (finding the ECPA's one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy); *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *22 (same as to HIPAA).

user information from its own website, for its own use, is not a violation of law. Rather, Defendants' knowing use of the Tracking Tools to **<u>disclose</u> the intercepted Sensitive Health Information to unauthorized third parties** constitutes a violation of law. While Defendants attempt to collapse this distinction, "[m]ultiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of [statutory law] is distinct from the interception of the private information." *ChoicePoint* 2025 U.S. Dist. LEXIS 169202, at *22-23 (collecting cases).

4. <u>Defendants' commercial motive does not insulate them from liability.</u>

Defendants further argue that because their purpose in installing the Tracking Tools was "commercial gain," they cannot be liable under the ECPA. Mot. at 7-8. But this interpretation of the ECPA "would move around the words in the statute and reshuffle the textual deck. It would change the placement of the adjectives. And changing the placement would change the meaning." *Stein v. Edward-Elmhurst Health*, 2026 U.S. Dist. LEXIS 43196, at *8 (N.D. Ill. Mar. 3, 2026). The *Stein* court precisely illustrates the flaws in Defendants' reasoning:

> A purpose to commit an act that is a crime or tort is different than a criminal or a tortious purpose. Requiring a criminal or tortious purpose significantly raises the bar for liability.
>
> By way of illustration, imagine someone driving down the highway past a sign that says "65 mph." A driver who blows past the sign at 100 mph could get a ticket for speeding. A purpose to violate the speed limit isn't necessary for liability. The driver could get a ticket even if the driver got carried away while jamming to the Rolling Stones, and lost track of his speed. But under [defendant]'s reading [of the ECPA], the driver could get away scot-free unless he had the purpose of violating the speed limit.

*Id.* at *10. Numerous courts within this Circuit concur. Indeed, "[c]rimes and torts often have financial motivations, and the statutory text broadly covers '*any* criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *B.N. v. Or. Reprod. Med., LLC*, 2025 U.S. Dist. LEXIS 222638, at *11 (D. Or. Nov. 12, 2025) (quoting 18 U.S.C. § 2511(2)(d)) (emphasis in original). As the Ninth Circuit has held, "the existence of a lawful purpose does not

mean that the interception is not also for a tortious or unlawful purpose." *Sussman*, 186 F.3d at 1202.[5] Defendants' contrary position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *10. With blackmail, "[o]f course, [making money] is often the end goal[.]" *Id.* at *20. Thus, under Defendants' reading, "blackmail would rarely, if ever, violate the ECPA…. This cannot be the case." *Id.*[6]

**ii. Plaintiffs' allege disclosure of the contents of their communications.**

In their Motion, Defendants argue that the fact that the Pharmaceutical Websites are "publicly accessible" is "dispositive" under the Ninth Circuit's decision in *Zynga*. *See* Mot. at 11-12 (citing *Zynga*, 750 F.3d at 1098). This conclusion is confounding. In *Zynga*, the Ninth Circuit distinguished between Tracking Tool disclosures showing only "the webpage address…of a webpage a user is viewing on the internet"—referred to by the Ninth Circuit as "record information"—and other Tracking Tool transmissions which are actionable under the ECPA because they evince the "contents" of the user's communication through the webpage. *Zynga*, 750 F.3d at 1106. But nowhere in *Zynga* does the Ninth Circuit even mention a distinction between public and private websites, let alone hold that the public nature of a tracked page is "dispositive." *See generally*, *id.* Indeed, numerous Ninth Circuit courts have explicitly found that Tracking Tools on public websites disclosed the contents of user's communications to third parties under myriad circumstances. *See, e.g., Costco*, 2024 U.S. Dist.

---

[5] *See Walgreen*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Riganian v. LiveRamp Holdings, Inc.*, 2025 U.S. Dist. LEXIS 138122, at *29 (N.D. Cal. July 18, 2025) ("Accordingly, the Court declines to adopt any 'bright-line rule insulating financial motives from the crime-tort exception'") (quoting *Costco*, 2024 U.S. Dist. LEXIS 207197, at *6; *Tenet Healthcare*, 2025 U.S. Dist. LEXIS 109134, at *69 ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

[6] Additionally, whether Defendants had criminal or tortious intent when intercepting Plaintiff's communications is a factual issue that cannot be resolved at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of [defendant]'s actual purpose for…using the Pixel Code requires a factual undertaking").

LEXIS 207197, at *23-23 (ECPA claim for tracking on public online storefront survived dismissal); *Walgreen*, 733 F. Supp. 3d 876, 893 (same); *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *22 (same as to public appointment request form for medical provider).

Here, Plaintiffs allege not merely the disclosure of the URLs that they accessed (*i.e.*, "record information,") but allege further that Defendants disclosed the specific actions they took on the Website to download the Savings Cards for their prescriptions. These disclosures clearly evince the content of Plaintiffs' communications with the Pharmaceutical Websites: that they accessed the Pharmaceutical Websites to obtain a Savings Card for a specific prescription, and they each received Savings Cards from Defendants. Similar allegations have been found sufficient to show "content" disclosures actionable under the ECPA.[7] Moreover, Plaintiffs both allege that that they began to see targeted ads related to their medical conditions after downloading their Savings Cards, showing that the information provided to Google **did** convey their medical conditions to Google, enabling it to bombard Plaintiffs with targeted advertisements relating to those conditions. *See* Compl. ¶¶ 22, 29.

### B. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED.

To state a claim for negligence, a plaintiff must establish: (1) the existence of a duty of care, (2) breach of that duty, (3) causation, and (4) damages. *Sanchez ex rel. Sanchez v. Wal-Mart Stores*, Inc., 221 P.3d 1276, 1280 (Nev. 2009); *Ruiz v. Victory Properties, LLC*, 107 A.3d 381 (Conn. 2015); *Curd v. Mosaic Fertilizer, L.L.C.*, 39 So. 3d 1216, 1227 (Fla. 2010). Plaintiffs plausibly allege a negligence claim. They allege: (1) Defendants have a duty to protect the Sensitive Health Information it collects through their Websites, Compl. ¶¶ 145, 190; (2) Defendants breached their duty by employing the Tracking Tools to collect and disseminate Plaintiffs' Sensitive Health Information to

---

[7] *See, e.g., Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 70510, at *12 (N.D. Cal. Apr. 4, 2025) ("[plaintiffs] allege that [defendants] collected their URLs, button clicks, and viewing and cart history. This information discloses [p]laintiffs' 'personal interests, queries, and habits,' which is plausibly alleged to be content") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020)); *Selby v. Sovrn Holdings, Inc.*, 2025 U.S. Dist. LEXIS 205538, at *9 (N.D. Cal. Oct. 16, 2025) (holding that the plaintiffs adequately allege that the content of their communications was collected because "among other things, [defendant] collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed."); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893 (S.D. Cal. Feb. 13, 2025) (holding "searches for prescription medication" concern the "substance, purport, or meaning of that communication" for ECPA purposes).

third parties without Plaintiffs' consent, *id*. ¶¶ 6, 11, 93, 191; and (3) Defendants' breach caused Plaintiffs' Sensitive Health Information to diminish in value, caused Plaintiffs to lose the benefit of their bargain with Defendants, and caused an invasion of Plaintiffs' privacy, *id*. ¶¶ 14, 106, 180, 235).

**i. The Economic Loss Doctrine Does Not Bar Plaintiffs' Claim**

While the economic loss doctrine "generally 'bars unintentional tort actions when the plaintiff seeks to recover purely economic losses[,]'" *Lombino v. Bank of Am., N.A.*, 797 F. Supp. 2d 1078, 1082 (D. Nev. 2011) (quoting *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009)), courts within the Ninth Circuit have found that an individual's "loss of control" over their personal information and "the accompanying impairment in value" of personal information "constitutes non-economic harms." *Plaintiffs v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1188 (D. Nev. 2022) (collecting cases). "Indeed, it is difficult to conceive how the dissemination of an individual's [Sensitive Health Information] does not necessarily diminish their control over their digital and physical identity." *Id.* Accordingly, Plaintiffs' allegations implicate non-economic harms and the economic loss doctrine does not bar Plaintiffs' negligence claim under Nevada law. The same is true under Connecticut law. *Mountain W. Helocoper, LLC v. Kaman Aerospace Corp.*, 310 F. Supp. 2d 459, 467 (D. Conn. 2004) ("When a plaintiff alleges property damage beyond purely economic loss, the economic loss doctrine does not apply") (citation omitted).

**ii. Defendants had a Duty to Protect Plaintiffs' Sensitive Health Information**

Every person has a duty to prevent causing harm to others when their conduct creates a foreseeable risk, or when the law creates a duty. *See Merluzzi v. Larson*, 96 Nev. 409, 610 P.2d 739, 742 (Nev. 1980) (Nevada law, citing W. Prosser, Law of Torts § 53, at 324 (4th ed. 1971)); *Ombres v. City of Palm Beach Gardens*, 788 F. App'x 665, 667 (11th Cir. 2019) (Florida law, quoting *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989)); *Murray v. Conn. Coll.*, 2025 U.S. Dist. LEXIS 186601, at *23 (D. Conn. Sept. 23, 2025) (Connecticut law, citing *Jaworski v. Kiernan*, 241 Conn. 399, 404, 696 A.2d 332 (Conn. 1997)).

As discussed in greater detail in § III(A)(i), *supra*, Defendants had obligations under HIPAA and other data privacy statutes to protect the privacy of protected health information. And website operators have a general duty to protect Sensitive Health Information they collect from website users.

*See, e.g., MGM Resorts Int'l*, 638 F. Supp. 3d at 1188 (defendant breached duty of care in manner of collecting, maintaining and controlling customers' sensitive personal information); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (holding that a website operator has "a responsibility to handle its users' Sensitive Health Information with care"); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046 (N.D. Cal. 2025) ("Defendant's alleged lack of reasonable care in handling Plaintiffs' personal information caused foreseeable harm to Plaintiffs….Plaintiffs therefore alleged a valid duty of care by alleging that they placed trust in Defendant to protect their personal information, which Defendant then disclosed.").

**iii. Defendants' Breach of Their Duty Caused Plaintiffs Cognizable Injury**

Plaintiffs adequately allege cognizable harms proximately caused by Defendants' breach of their duty. Defendants mischaracterize Plaintiffs' allegations, claiming that their "sole alleged 'injury' is seeing targeted advertisements." Mot. at 22. This is incorrect. Plaintiffs do not allege that they received targeted advertising as a standalone harm; rather, they offer these allegations to demonstrate that Defendants' unauthorized disclosure of their Sensitive Health Information allowed the Tracking Tool Providers to learn of their medical conditions. The fact that these targeted advertisements were for "products and services related to [the] medical condition[s]" they were treating with Defendants' pharmaceutical products, Compl. ¶¶ 22, 29, supports a plausible inference that Defendants' breach proximately caused their alleged harms. *See Gaige, LLC*, 2025 U.S. Dist. LEXIS 17146, at *6-7 (finding allegations that plaintiff received targeted advertisements as a result of defendant's disclosure of plaintiff's health communications sufficient for the purposes of causation in the standing context). Defendants' reliance on a single out-of-Circuit case where the plaintiffs did allege targeted advertising to be a harm they suffered is, therefore, unpersuasive. *See* Mot. at 22 (citing *T.D. v. Piedmont Healthcare, Inc.*, 2024 U.S. Dist. LEXIS 154229, at *11 (N.D. Ga. Aug. 28, 2024)). Plaintiffs allege that they suffered numerous injuries as a result of Defendants' surreptitious use of Tracking Tools to disclose their Sensitive Health Information to the Tracking Tool Providers including (i) benefit of the bargain damages, (ii) diminution of value damages, and (iii) invasion of privacy. Compl. ¶ 14.

1. Loss of Benefit of the Bargain

"A significant body of case law in the Ninth Circuit supports a benefit-of-the-bargain theory based on an implied contract that a defendant will safeguard PII when it is provided by a customer in exchange for goods and services." *Smith v. Findlay Auto., Inc.*, 2025 U.S. Dist. LEXIS 60934, at *12 (D. Nev. Mar. 31, 2025) (internal quotation marks and citation omitted). As discussed in greater detail in § III(E), *infra*, Plaintiffs allege the existence of such an implied contract under which they expected reasonable data security. Plaintiffs further allege that they would not have used the Pharmaceutical Websites, or would have paid substantially less for those services, had they known that their Sensitive Health Information would be disclosed. Compl. ¶ 203. These allegations suffice to plead that Plaintiffs lost the benefit of their bargain with Defendants. *See Archambault v. Riverside Resort & Casino, Inc.*, 2025 U.S. Dist. LEXIS 176564, at *15 (D. Nev. Sept. 9, 2025) (finding allegations that plaintiff "paid more for goods and services than they otherwise would have, based on the belief that defendant would implement reasonable security practices" to be "sufficient for a plaintiff to allege that reasonable data security was part of the bargain, which they did not receive"); *MGM Resorts Int'l*, 638 F. Supp. 3d at 1190 (finding "general factual allegations about the plaintiff's expectations for data security and the contours of the parties' bargain" sufficient to allege benefit of the bargain damages); *In re Eureka Casino Breach Litig.*, 2024 U.S. Dist. LEXIS 169803, at * (D. Nev. Sept. 19, 2024) (denying motion to dismiss and finding benefit-of-the-bargain damages to be a cognizable harm").

2. Diminution of Value

"Diminution in value of personal information can be a viable theory of damages." *Archambault*, 2025 U.S. Dist. LEXIS 176564, at *16 (citing *Pruchnicki v. Envision Healthcare Corp.*, 430 F. Supp. 3d 1226, 1234 (D. Nev. 2020), *aff'd*, 845 Fed. App'x 613 (9th Cir. 2021)). Plaintiffs allege that their Sensitive Health Information has financial value and that there exists a market for their Sensitive Health Information. Compl. ¶¶ 101-05. Plaintiffs allege that Defendants' unauthorized disclosure of their Sensitive Health Information resulted in the diminution of value of their Information. *Id.* ¶ 106. This is sufficient to allege cognizable harm. *See, e.g., Archambault*, 2025 U.S. Dist. LEXIS 176564, at *16 (finding plaintiffs alleged cognizable harm where they alleged that their

PII has inherent market value and its value diminished by its unauthorized release); *Stallone v. Farmers Grp., Inc.*, 2022 U.S. Dist. LEXIS 199845, at *36 (D. Nev. Oct. 15, 2022) (same where plaintiff alleged damages due to the diminished value of his PII).

3. Invasion of Privacy

Lastly, Plaintiffs allege that Defendants' breach of their duty caused them to suffer an invasion of privacy. Compl. ¶ 235. "[I]n the context of negligence damages," invasion of privacy is a cognizable harm. *Archambault*, 2025 U.S. Dist. LEXIS 176564, at *18; *see also Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *28 (finding plaintiffs' allegations that certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised" were sufficient to establish harm); *In re Facebook, Inc.*, 402 F. Supp. 3d at 799 (finding plaintiffs "alleged present and non-speculative privacy injuries sufficient to state negligence claim predicated on defendant's alleged collection and dissemination of user information to third parties").

**C. PLAINTIFFS' INVASION OF PRIVACY CLAIMS ARE WELL-PLED.**

Plaintiffs state a claim for invasion of privacy premised on both intrusion upon seclusion and public disclosure of private facts.

**i. Plaintiffs plausibly allege intrusion upon seclusion.**

Defendants correctly identify the elements of a claim for intrusion upon seclusion as: "(1) an intentional intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person." *See* Mot. at 15. This comports with the Restatement of Torts, followed by courts in Nevada, Connecticut, and Florida.[8] *See* Restatement (Second) of Torts § 652B. Plaintiffs have sufficiently pled these elements.

---

[8] *See, e.g., Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1448 at fn. 3 (D. Nev. 1994) (identifying the elements of an intrusion claim and observing that "[t]his formulation is in accordance with the Restatement.") (citing Restatement (Second) of Torts § 652B); *Davidson v. City of Bridgeport*, 180 Conn. App. 18, 30 n.15, 182 A.3d 639, 646 (2018) ("Section 652B [of the Restatement] states that one who intentionally intrudes on the seclusion of another is subject to liability if the intrusion would be highly offensive to a reasonable person."); *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. Dist. Ct. App. 2021) ("Intrusion upon seclusion is defined as where a person 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns…if the intrusion would be highly offensive to a reasonable person.'") (quoting Restatement (Second) of Torts § 652B).

**ii. Defendants' use of surreptitious Tracking Tools constitutes an "intrusion."**

Defendants assert that an intrusion claim requires a "defendant [to] affirmatively reach[] into a space where the plaintiff had withdrawn from public view." Mot. at 15. Unsurprisingly, Defendants do not cite any authority for this proposition. Defendants are incorrect: numerous courts have recognized that "[c]onduct that amounts to…unreasonable surveillance, even if conducted in a public or semi-public place, may nevertheless rise to the level of invasion of privacy based on intrusion upon seclusion." *Goosen v. Walker*, 714 So. 2d 1149, 1150 (Fla. Dist. Ct. App. 1998); *see also Jackman*, 334 So. 3d at 657 ("[E]ngaging in repeated surveillance of another person can constitute the tort of invasion of privacy—intrusion upon seclusion[.]").

Defendants' contention that "Plaintiffs voluntarily navigated to Defendants' own public websites and initiated every interaction" is without merit. Mot. at 15. In similar website-tracking cases, courts have determined that "the voluntariness of [a] [p]laintiffs' actions is immaterial to the intrusion upon seclusion claim." *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *30 (D. Ariz. May 10, 2024). For example, in *Lau v. Gen. Digit. Inc*., the court found that although the plaintiffs provided the defendant with access to their internet browsing data by downloading its software program, the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers." 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024). Accordingly, the court held that the complaint "plausibly allege[d] an intrusion based on the defendants' access to the plaintiffs' extensive private browsing data, which the plaintiffs would not have provided had they known that the defendants would allegedly store and share the data in contravention of their reasonable expectations." *Id*. at *11. Likewise in *Opperman v. Path, Inc.*, the plaintiffs downloaded the defendant's mobile phone application and granted it access to their cellular address book. 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014). The defendant subsequently collected information from plaintiffs' address books and used it for commercial purposes without plaintiffs' knowledge. *Id.* Accordingly, the court found that plaintiffs had pled a claim for intrusion upon seclusion because "[p]laintiffs alleg[ations] that their consent was obtained by fraud, and that their consent was therefore invalid" supported a finding that

plaintiffs had "a reasonable expectation of privacy with respect to the address books copied by each app at issue." *Id.*[9] And in *McCulley*, the court rejected the defendant's argument that the plaintiffs voluntarily shared their information on its website because the plaintiffs therein alleged that "they were unaware that their search terms [on the website] would be disclosed to third parties" and they "did not consent to the third parties gaining access to these search terms[.]" *McCulley*, 2024 U.S. Dist. LEXIS 85232, at *30-31. The Court concluded that "this lack of consent is sufficient to base an intrusion upon seclusion claim." *McCulley*, 2024 U.S. Dist. LEXIS 85232, at *31; *see also Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, 2025 U.S. Dist. LEXIS 192453, at *17 (D. Md. Sept. 30, 2025) (denying motion to dismiss intrusion claim where the plaintiffs alleged that there was no disclosure or indication on the defendant's website that would put a reasonable user on notice that the defendant would be disclosing their private health information to internet marketing and analytics companies).

At minimum, Plaintiffs allege that Defendants facilitated intrusions by unauthorized third parties like the Tracking Tool Providers. Compl. ¶ 6. Several courts in the Ninth Circuit have found similar allegations that a defendant "permitted unauthorized third parties to intrude on [the] [p]laintiff's affairs by purposefully embedding tracking tools on [its website] facilitating such intrusion" sufficient to sustain an intrusion claim. *M.H. v. Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *6 (N.D. Cal. Feb. 26, 2025) (quotations omitted); *see also D'Antonio v. Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 32257, at *6-7 (N.D. Cal. Feb. 17, 2026) (finding allegations that the defendant "voluntarily 'chose,' 'caused,' and 'allowed' third-party tracking tools to integrate into its website…sufficient to plead that [the defendant] facilitated third parties' intrusions into [the plaintiffs'] privacy and seclusion.").

**iii. Plaintiffs have a reasonable expectation of privacy in their Sensitive Health Information.**

Next, Defendants contend that their publicly accessible websites are not private spaces where Plaintiffs could reasonably expect privacy. Mot. at 16. However, courts have refrained from making

[9] *See also Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1270 (9th Cir. 1998) (reversing grant of summary judgment for defendant employers on invasion of privacy claim where the plaintiff employees agreed to give blood and urine samples for an employment-related health exams without realizing that the defendants would conduct additional intrusive medical and genetic testing on those samples for syphilis, pregnancy, and sickle cell traits).

a blanket assertion that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *see also Walgreen*, 733 F. Supp. 3d at 891 ("The Court disagrees with Defendant's attempt to paint a bright line barring privacy claims based on website browsing activity[.]").Indeed, at the pleadings stage, courts in this District have allowed intrusion claims to proceed where a plaintiff alleges that "he never authorized his personal health information to be shared [with a third party]." *Lopez v. Clark Cty. ex rel. Clark Cty. Fire Dep't*, 2016 U.S. Dist. LEXIS 177762, at *5-6 (D. Nev. Dec. 20, 2016) ("And even if Lopez authorized his information to be shared, the complaint does not suggest that he would have known that multiple people…would be given access to this information—thus he could have had a reasonable expectation of privacy as to at least some of the people he alleges received his information."); *see also Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *5-6 (allowing intrusion claim to proceed where "[t]he Complaint plausibly alleges that Plaintiff had a reasonable expectation of privacy in his health-related communications with [the defendant], and that [the defendant's] alleged intrusion by disclosing personal health information to third parties was highly offensive.") (citations omitted).

Defendant's reliance on *W.W. v. Orlando Health, Inc.*, 2025 U.S. Dist. LEXIS 40038 (M.D. Fla. Mar. 6, 2025) is misplaced. In *Orlando Health*, dismissal was granted because the plaintiff "cite[d] no authority to demonstrate that Florida would recognize an intrusion upon seclusion claim based on the facts alleged in her complaint." *Id.* at *30-31. But case law post-*Orlando Health* demonstrates such recognition—particularly where, as here, a website intercepts and discloses health related information.[10]

---

[10] For example, in *Cobbs v. Petmed Express, Inc.*, while the court dismissed an intrusion claim against an online veterinary pharmacy that integrated third party tracking tools on its website, this was because the plaintiffs' "privacy interest in their pets' veterinarian information…cannot be equated with the sorts of offensive intrusions that have triggered liability under the common law (like the disclosure of intimate photographs or ***medical information concerning human patients***)." 2026 U.S. Dist. LEXIS 74228, at *28-29 (S.D. Fla. Jan. 14, 2026) (emphasis added). And in *Diflumeri v. Raymond James Fin., Inc.*, the court refused to stay discovery pending resolution of a defendant's motion to dismiss, *inter alia*, intrusion claims arising out of the use of website surveillance technologies, because it did not find the defendant's motion "clearly meritorious." 2025 U.S. Dist. LEXIS 256244, at *5 (M.D. Fla. Dec. 11, 2025). Even cases predating *Orlando Health* have held that "unreasonable surveillance, ***even if conducted in a public or semi-public place***, may nevertheless rise to the level of invasion of privacy based on intrusion upon seclusion." *Goosen*, 714 So. 2d at 1150

**iv. Defendants' unauthorized disclosures of Plaintiffs' Sensitive Health Information are "highly offensive."**

Defendants' argument that their conduct is not "highly offensive" is similarly unavailing. Mot. at 16-17. Contrary to Defendants' assertion, Plaintiffs do not take issue with "ordinary website analytics[.]" *Id*. at 16. Instead, the intrusions here concern Plaintiffs' private health information. Courts have consistently differentiated between invasion of privacy cases like this one, involving health information, and other cases, like those cited by Defendants, that only concern non-private online retail behavior.[11] For example, in *Harrill v. Emanuel Med. Ctr*., the court dismissed the intrusion claim finding the plaintiff's allegations regarding her browsing activity "vague" because she did not "specifically allege that her searches related to the provision of healthcare, patient status, or otherwise included PHI." 2025 U.S. Dist. LEXIS 109125, at *18 (E.D. Cal. June 9, 2025). Here, however, Plaintiffs "allege attempts to purchase specific health-related items which give rise to an obvious inference about the purchaser's health condition." *Walgreen*, 733 F. Supp. 3d at 893 (finding allegations sufficient to survive a motion to dismiss based on the "highly offensive" element because they "differ in kind and severity" from "claims for public browsing activities that do not reveal personal medical information[.]"); *see also* § III(A)(i)(2) (outlining Plaintiffs' specifically alleged Sensitive Health Information). Accordingly, "the personal nature of the medical products Plaintiffs allegedly purchased, and the obvious inferences to be drawn from those purchases, render any disclosure of that information much more likely to seriously harm the purchaser and violate social

---

(emphasis added). The *Orlando Health* plaintiff's failure to point to these authorities should not bear on the resolution of this case.

[11] *See, e.g.*, *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.") (emphasis in original); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("unlike communications made while inquiring about items of clothing on a retail website, health-related communications with a medical provider are almost uniquely personal."); *Adair v. CIGNA Corp. Servs., LLC*, 2026 U.S. Dist. LEXIS 23288, at *24-26 (E.D. Pa. Feb. 4, 2026) ("Persuasively, in finding a lack of standing in invasion-of-privacy cases involving online retail behavior, courts in this District have widely noted that the interception of health information would give rise to standing.") (collecting cases); *see also Harrill v. Emanuel Med. Ctr*., 2025 U.S. Dist. LEXIS 109125, at *18-19 (E.D. Cal. June 9, 2025) ("To be clear, Plaintiff has a reasonable expectation of privacy in her medical information….But given the limited factual allegations in Plaintiff's operative complaint, the court does not find Plaintiff has sufficiently alleged that her browsing activity pertains to her own medical information.") (citing *Desert Care Network*, U.S. Dist. LEXIS 18970, at *25 ("Patients' right to privacy in their medical records is well-settled.")).

norms." *Id*. at 893-94.

"Moreover, this issue is generally not suitable for determination on the pleadings." *Done Glob.*, 2025 U.S. Dist. LEXIS 38456, at *6 (citing *In re Facebook*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")). "Whether a particular invasion or intrusion was highly offensive presents a mixed question of law and fact and requires considering the degree and setting of the intrusion and the intruder's motives and objectives." *D'Antonio v. Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 32257, at *7-8 (N.D. Cal. Feb. 17, 2026) (quotations and citations omitted). "As a result, dismissal under Rule 12(b)(6) is appropriate only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Id*. (quotations omitted).

**v. Plaintiffs plausibly allege public disclosure of private facts.**

Defendants are correct that Nevada, Florida, and Connecticut recognize the tort of public disclosure under the Restatement framework and adopt its elements. Mot. at 17. Contrary to Defendants' assertion, however, Plaintiffs have sufficiently pled the elements of this claim.

1. <u>Plaintiffs' Sensitive Health Information are "private facts."</u>

Defendants state that there are no "private facts" to disclose because Plaintiffs did not transmit any personal or health information through the Pharmaceutical Websites. Mot. at 17. Defendants are wrong. As explained in Section III(A)(i)(2), *supra*, the Sensitive Health Information transmitted via the Tracking Tools is PHI.

But even assuming, *inter alia*, that the Sensitive Health Information is not PHI under HIPAA, Plaintiffs' allegations still plausibly relate to "phases of [their] life and [their] activities and some facts about [themselves] that [they] do[] not expose to the public eye, but keep[] entirely to [themselves] or at most reveal[] only to [their] family or to close personal friends." Restatement (Second) of Torts § 652D cmt. b. ("many unpleasant or disgraceful or humiliating illnesses" are "normally entirely private matters"). Plaintiffs do not allege that they simply "click[ed] a publicly available download link[.]" Mot. at 17. Instead, each Plaintiff enrolled in the savings program for prescription medication (Doryx and Imvexxy) used to treat a specific health condition (acne and vaginal atrophy). Compl. ¶¶

4, 19, 26. This information -- which was transmitted to third parties alongside personal identifiers via the Tracking Tools -- "give[s] rise to an obvious inference about [Plaintiffs'] health condition[s]." *Walgreen*, 733 F. Supp. 3d at 893. This is sufficient to sustain a tort of public disclosure at the pleadings stage. *See, e.g., Doe v. Aetna Life Ins. Co.*, 2018 U.S. Dist. LEXIS 216447, at *13 (M.D. Fla. Dec. 27, 2018) (disclosure of plaintiff's HIV status sufficient to sustain claim).

2. <u>Defendants' use of Tracking Tools constitutes "public disclosure."</u>

"Publicity" as defined in the Restatement, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. Indeed, "a defendant may become liable through revealing the matter to only one person, from whom the information predictably goes to many[.]" *Williams v. Minneola*, 575 So. 2d 683, 689 (Fla. Dist. Ct. App. 1991). Courts have recognized that "the harm that results from 'posting' medical information on the internet has a close relationship to…the public disclosure of private facts." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 910 (S.D. Cal. 2020).

Defendants contend that there was no publicity. Mot. at 18. Once again, Defendants conflate "the routine, automated operation of commercial software tools" with the Tracking Tools at issue here. *Id*. Here, Plaintiffs allege that their Sensitive Health Information was transmitted to two massive, global corporations, Google and Facebook, not merely for their own use but for use in a mass advertising surveillance apparatus that includes the operators of ***74-percent*** of all web traffic. Compl. ¶¶ 6-10, 45-48. These companies "aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that they have collected about a given user" which they then use to allow "their clients to target internet users" based on that information. *Id.* ¶ 45. In the words of Google's former CEO, these profiles allow advertisers to "know where you are[,] where you've been[,] and what you're thinking about." *Id*. ¶ 48. The scope of this disclosure is more than sufficient to satisfy the "publicity" prong. *See, e.g., Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *20-21 (W.D. Wis. June 28, 2024) (finding sufficient publicity where plaintiffs alleged that information disclosed through tracking pixel was transmitted to "various technology companies that employ hundreds of thousands of employees who

have access to this information").

3. Defendants' disclosures are "highly offensive."

Finally, Defendants argue that the disclosures are not highly offensive. Mot. at 18. As explained in Section III(C)(iv), *supra*, Defendants are wrong. Regardless, "this issue is generally not suitable for determination on the pleadings." *Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *6.

### D. PLAINTIFFS' BREACH OF CONFIDENCE AND BREACH OF FIDUCIARY DUTY CLAIMS ARE WELL-PLED.

A fiduciary duty is owed "in confidential relationships, where one party gains the confidence of the other and purports to act or advise with the other's interests in mind," or "when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007). This duty is "very broad." *Ducat Florida, LP v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 193606, at *2 (S.D. Fla. Jan. 13, 2014). It is a breach of the duty for "a health care provider [to] disclose[] unauthorized confidential medical information." *Davis v. Yale New Haven Health Servs. Corp*., 2024 Conn. Super. LEXIS 2718, *6.

Several courts have recognized that websites that "function[] as a healthcare provider" can be subject to a tort claim of breach of confidence. *Pattison v. Teladoc Health, Inc.*, 2025 U.S. Dist. LEXIS 121044, at *13 (S.D.N.Y. June 25, 2025); *Wallace v. Health Quest Sys., Inc*., 2021 U.S. Dist. LEXIS 54557, at *32 (S.D.N.Y. Mar. 23, 2021) (noting that the duty of confidence "has been extended beyond the physician-patient context to healthcare corporations because the 'cloak of confidentiality wraps around more than the health care professional who renders…services'") (quoting *Doe v. Cmty. Health Plan - Kaiser Corp.*, 268 A.D.2d 183, 186, 709 N.Y.S.2d 215, 217 (App. Div. 3rd Dept. 2000)). Similarly, courts have extended the fiduciary duty to protect health information beyond the physician-patient context. *See, e.g., Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151 (D. Mass. 2024) (plaintiff stated a viable breach of fiduciary duty claim against the operator of a healthcare service website); *Adair*, 2026 U.S. Dist. LEXIS 23288, at *49 (plaintiffs stated a breach of fiduciary duty claim where they alleged that "by entering medical information on [the defendant's] website, they relinquished control over how that information would be handled, which

they posit[ed] gave rise to a fiduciary relationship.").

Defendants argue that Plaintiffs have failed to allege a duty of confidence or any fiduciary duty in connection with their Sensitive Health Information. Mot. at 18-21. In doing so, Defendants attempt to reframe the Websites as "informational websites that anyone with an internet connection can access" and characterize their relationships with their patients as "arm's-length interaction[s.]" Mot. at 19. But Plaintiffs' allegations demonstrate that Defendants operate as health care providers in connection with their Websites. Compl. ¶¶ 112-113. Indeed, Defendants explicitly state that they "adhere[] to applicable privacy laws and regulations including the [HIPAA]" and repeatedly refer to Plaintiffs and Class Members as their "patients." *Id.* As the *Pattison* court explained, "[i]t would be contrary to the purposes undergirding the breach of confidence tort to allow Defendant to function as effectively as a healthcare provider, reap the benefits of providing such services to its consumers (who are, in actuality, its patients), only to circumvent the obligations of confidentiality that any healthcare provider in the United States is subject to." *Pattison*, 2025 U.S. Dist. LEXIS 121044, at *13. Further, Plaintiffs' Sensitive Health Information is PHI that Defendants were obligated to protect under HIPAA and various state statutes. *See supra,* § III(A)(i)(2). Defendants' disclosures of this Sensitive Health Information to unauthorized third parties via the Tracking Tools is sufficient to sustain claims for breach of confidence and breach of fiduciary duty. *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *8 (N.D. Cal. Mar. 19, 2024) (denying motion to dismiss breach of confidence claim where the plaintiff alleged that the defendant had obligations under federal and state law to keep her health information confidential but nonetheless disclosed that information to third parties by way of the Facebook pixel on its website); *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *12-13 (allowing breach of fiduciary duty claim to proceed where the plaintiffs alleged that the defendant "was acting as a 'medical provider' and that they used [its website] to access [] medical services…and that in doing so [the] [p]laintiffs provided their PHI to [the defendant] creating a fiduciary duty.").

### E. PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED.

The elements of a breach of implied contract claim are primarily the same as those for breach of an express contract, except that the terms of an express contract are stated in words while those of

an implied contract are manifested by conduct. *See, e.g.*, *Robertson v. Formation Nation*, 2025 U.S. Dist. LEXIS 213150, at *16 (D. Nev. Oct. 27, 2025); *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 245 (Fla. Dist. Ct. App. 2024). To prevail on an implied contract claim, "the plaintiff must demonstrate that 'both parties intended to contract and that promises were exchanged….'" *Robertson*, 2025 U.S. Dist. LEXIS 213150, at *16 (quoting *Smith v. Recrion Corp.*, 91 Nev. 666, 541 P.2d 663, 665 (Nev. 1975)). By applying for and obtaining Savings Cards, Plaintiffs exchanged their Sensitive Health Information with the understanding that Defendants would safeguard the information and not disclose it without consent—otherwise Plaintiffs would not have entrusted their data to Defendants.

The mandatory receipt of Plaintiffs' Sensitive Health Information when they applied for and obtained Savings Cards from Defendants suffices as the basis of Defendants' implied promise to protect Plaintiffs' Sensitive Health Information. Indeed, "'it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of…sensitive personal information would not imply the recipient's assent to protect [the] information sufficiently.'" *MGM Resorts Int'l*, 638 F. Supp. 3d at 1175 (*quoting Castillo v. Seagate Tech, LLC*, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sept. 14, 2026)). Numerous courts have found allegations similar to Plaintiffs' to adequately allege the existence of an implied contract. *See, e.g., Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 U.S. Dist. LEXIS 206552, at *13 (C.D. Cal. July 29, 2022) ("Other courts in this district have held, and the Court agrees, that the mandatory receipt of PII implies the recipient's assent to protect the PII sufficiently."); *In re Ambry Genetics Data Breach Litig*., 567 F. Supp. 3d 1130, 1143-44 (C.D. Cal. Oct. 18, 2021) (finding plaintiffs adequately stated a breach of implied contract despite defendants not expressly agreeing to protect their PII where "[p]laintiffs allege[d] that they gave their [PII] to [d]efendants for purposes of obtaining genetic testing, with the understanding that [d]efendants would take adequate measures to protect the information").

### F. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL-PLED.

"[T]he elements of an unjust enrichment claim are: '(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant; (4) in circumstances where it would be inequitable to retain the benefit without payment.'" *Ames v. Caesars Ent. Corp*., 2019 U.S. Dist. LEXIS 55302 (D. Nev. Apr. 1, 2019)

(quoting *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997)); *see also Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 595 (Conn. 2009); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)). Plaintiffs' allegations that Defendants intentionally and surreptitiously disclosed their Sensitive Health Information to profit suffice to adequately plead unjust enrichment at the motion to dismiss stage. *See Walgreen*, 773 F. Supp. 3d at 900 (declining to dismiss unjust enrichment claim where plaintiffs alleged data collected and disclosed through tracking tools was used to enhance advertising services and increase defendant's own profits); *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024) (same in a Meta Pixel action alleging misuse of personally identifiable information); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 U.S. Dist. LEXIS 178369, at *6 (N.D. Cal. Oct. 3, 2023) (holding plaintiffs sufficiently pleaded facts to establish unjust enrichment where plaintiffs alleged they would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy).

## IV. CONCLUSION[12]

For the reasons stated herein, Plaintiffs ask that Defendants' Motion be DENIED.

[12] Defendants additionally assert that Defendants Therapeutics and DPT should be dismissed from this matter because Plaintiffs do not allege that they operated the Pharmaceutical Websites or Tracking Tools. Mot. at 3. Not so. As Defendants seemingly recognize, Plaintiffs' Complaint refers to all three Defendants as operating the Pharmaceutical Websites throughout. *See* Compl., *passim*; *see also* Mot. at 4. It is black-letter law that these allegations are accepted as true at this juncture and Defendants' failure to provide an affidavit supporting their factual dispute renders this issue incapable of adjudication through 12(b)(6) Motion.

Dated: April 27, 2026

Respectfully submitted,

<u>*/s/ Sonjay Singh*</u>

Sonjay Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Telephone: (212) 532-1091
E-mail: ssingh@sirillp.com

Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: mona@kazlg.com

*Attorneys for Plaintiffs*