DICKINSON WRIGHT PLLC
Michael N. Feder
Nevada Bar No. 7332
Gabriel A. Blumberg
Nevada Bar No. 12332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169-0965
Tel: 702-550-4400
Fax: 844-670-6009
mfeder@dickinson-wright.com
gblumberg@dickinson-wright.com

ARNOLD & PORTER KAYE SCHOLER LLP
David B. Schwartz *(pro hac vice submitted)*
Jami Vibbert *(pro hac vice submitted )*
250 West 55th Street
New York, NY 10019-9710
Tel: 212-836-8000
Fax: 212-836-8689
david.schwartz@arnoldporter.com
jami.vibbert@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Daniel E. Raymond *(pro hac vice submitted)*
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: 312-583-2379
Fax: 312-583-2360
daniel.raymond@arnoldporter.com

*Attorneys for Defendants Mayne Pharma Commercial LLC, TherapeuticsMD, Inc., and DPT Laboratories, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

N.O. and H.H., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MAYNE PHARMA COMMERCIAL LLC, THERAPEUTICSMD, INC., DPT LABORATORIES, LTD., and MITHRA PHARMACEUTICALS SA,

Defendants.

Case No. 2:25-cv-02593-CDS-DJA

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS


ARGUMENT ..... 1

I. PLAINTIFFS ESSENTIALLY CONCEDE THEY HAVE NOT PLED A CLAIM AGAINST THERAPEUTICSMD AND DPT ..... 1

II. PLAINTIFFS' ECPA CLAIM FAILS ..... 2

A. Plaintiffs' Allegations Do Not Satisfy the Crime-Tort Exception. ..... 2

1. Defendants Are Not HIPAA-Covered Entities. ..... 2

2. Plaintiffs Did Not Transmit Individually Identifiable Health Information. 4

3. Plaintiffs Failed to Allege a Criminal or Tortious Purpose Separate From the Predicate Interception. ..... 5

B. Plaintiffs Do Not Allege the Interception of "Contents" of Communications. ..... 6

III. PLAINTIFFS' COMMON LAW CLAIMS ALL FAIL ..... 8

A. Plaintiffs' Negligence Claim Is Not Well-Pled. ..... 8

1. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim. ..... 8

2. Defendants Had No Duty to Protect Plaintiffs' Information. ..... 9

3. Defendants' Alleged Breach Did Not Cause Plaintiffs' Cognizable Injury. 9

B. Plaintiffs' Invasion of Privacy Claims Are Not Well-Pled. ..... 10

1. Plaintiffs Do Not Plausibly Allege Intrusion Upon Seclusion. ..... 10

2. Plaintiffs Do Not Plausibly Allege Public Disclosure of Private Facts. ... 11

C. The Breach of Confidence and Fiduciary Duty Claims Are Not Well-Pled. ..... 11

D. Plaintiffs' Breach of Implied Contract and Unjust Enrichment Claims Fail. ..... 12

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. CIGNA Corp. Servs., LLC*, 818 F. Supp. 3d 641 (E.D. Pa. 2026) ....12

*Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024)....4

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)......4, 5, 6, 7

*D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ....10

*Doe v. Genesis Health Sys.*, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....6

*Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142 (D. Mass. 2024)....12

*Goosen v. Walker*, 714 So. 2d 1149 (Fla. Dist. Ct. App. 1998)....10

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)....9

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014)....7, 8

*I.T. v. ChoicePoint LLC*, 2025 WL 2495079 (W.D. Wash. Aug. 29, 2025)....4, 7

*Jackman v. Cebrink-Swartz*, 334 So. 3d 653 (Fla. Dist. Ct. App. 2021) ....10

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ....6

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ....1

*K.L. v. Legacy Health*, 2024 WL 4794657 (D. Or. Nov. 14, 2024)....4

*Lau v. Gen Digital, Inc.*, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ....10

*McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) ....10

*M.H. v. Done Global*, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025)....10

*Mountain W. Helicopter, LLC v. Kaman Aerospace Corp.*, 310 F. Supp. 2d 459 (D. Conn. 2004) ....8

*Nichols v. PeaceHealth Networks on Demand LLC*, 2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....6

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014)....10

*Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364 (S.D.N.Y. June 25, 2025) ..........................12

*Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226 (D. Nev. 2020) ..........................9

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ..........................................4, 5, 7, 11

*Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 16, 2025) ................................7

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..........................................9

*Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022)....................................8, 9

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .............................7

*Sussman v. ABC*, 186 F.3d 1200 (9th Cir. 1999) ........................................................................5, 6

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) ......................................................................................11

*Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)......................12

*Williams v. TMC Health*, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ......................................12

*W.W. v. Orlando Health, Inc.*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ..........................10, 11

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) ................................................7

**Statutes**

18 U.S.C. § 2510(8) .......................................................................................................................6

18 U.S.C. § 2511(2)(d) ...................................................................................................................5

42 U.S.C. § 1320d-2(a)(2) ..............................................................................................................2

**Regulations**

45 C.F.R. § 160.102 ...................................................................................................................2, 3

45 C.F.R. § 160.103 ...................................................................................................................3, 5

**Other Authorities**

65 Fed. Reg. 82,462 (Dec. 28, 2000) ........................................................................................2, 3

Restatement (Second) of Torts § 652D.........................................................................................11

*Transactions Overview*, CMS (Mar. 16, 2026, 6:53PM), https://www.cms.gov/priorities/key-initiatives/burden-reduction/ administrative-simplification/transactions ............................3

Plaintiffs' Opposition confirms that this case is exactly what Defendants' Motion described—a recycled, boilerplate Complaint built on conjecture rather than facts. The Opposition does not cure the many dispositive legal defects identified in the Motion. Choosing volume over substance, Plaintiffs cite an array of cases—nearly all string-cited in cramped footnotes without meaningful analysis—involving materially different circumstances for propositions that the cases do not support. Plaintiffs' inapposite authorities involve hospitals, pharmacies, and medical providers operating within actual physician-patient relationships who received and transmitted sensitive health information about identifiable patients. That is simply not this situation.

The allegations here are straightforward and woefully insufficient: Plaintiff N.O. visited doryx.com and clicked a button to download a free savings card for Doryx, and Plaintiff H.H. visited imvexxy.com and clicked a button to download a free savings card for Imvexxy. Compl. ¶¶ 18, 25. There is no allegation either Plaintiff visited the seven other sites, and no allegation that on the sites purportedly visited, they registered an account, enrolled in a program, submitted an application, logged in, or entered any information. Mot. at 2. The websites and savings cards are publicly accessible to anyone with a single click. *Id.* These allegations cannot sustain Plaintiffs' claims as a matter of law, and the Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

### I. PLAINTIFFS ESSENTIALLY CONCEDE THEY HAVE NOT PLED A CLAIM AGAINST THERAPEUTICSMD AND DPT

Plaintiffs cannot identify a single well-pled allegation that TherapeuticsMD or DPT "operated the Pharmaceutical Websites or Tracking Tools" to support any claim against them. Instead, in a footnote to their *Conclusion*, they point to *passim* group allegations as to "Defendants." Opp. at 24 n.12. But *Mayne* alone is alleged to "maintain[] consumer-directed marketing websites" for the products at issue. Compl. ¶ 4. TherapeuticsMD and DPT are pled only as drug *manufacturers*. *Id.* ¶¶ 4, 31–32. And in any event, group pleading TherapeuticsMD and DPT with Mayne as Defendants is insufficient. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008) (pleading "who, did what, to whom . . . where, and when" is required).

Plaintiffs' suggestion that the Court must accept their contradictory group pleadings as true and that an affidavit is required to dispute it (Opp. at 24 n.12) is wrong. The Motion does not raise a *factual* dispute requiring an affidavit; it raises a *pleading* defect. The question is whether the Complaint's well-pled allegations of fact state a claim against these two manufacturer Defendants. They do not. Every claim against them should be dismissed with prejudice.[1]

## II. PLAINTIFFS' ECPA CLAIM FAILS

### A. Plaintiffs' Allegations Do Not Satisfy the Crime-Tort Exception.

Plaintiffs concede that Mayne is a "party to the communication." Opp. at 2. As a result, Plaintiffs must (but do not) sufficiently allege facts to invoke the "crime-tort exception." In their Opposition, Plaintiffs argue that Defendants: (1) are HIPAA covered entities; (2) violated HIPAA, other privacy statutes, and numerous common law protections; and (3) had a criminal and/or tortious purpose separate from the predicate interception. Opp. at 2–9. Each argument fails.

#### *1. Defendants Are Not HIPAA-Covered Entities.*

Plaintiffs recognize that they have *zero* caselaw to support their argument that Defendants are covered entities. Opp. at 3. This Court should reject Plaintiffs' invitation to be the first court to ignore HIPAA's plain text and Congress's intent to do so. HIPAA applies only to "covered entities" and their business associates. 45 C.F.R. § 160.102. As explained in the Motion, drug manufacturers, like Defendants, even if health care providers, *cannot* be covered entities unless they engage in certain electronic transactions, called standard transactions. Mot. at 8–9. Critically, Plaintiffs ignore this requirement other than citing three paragraphs in the Complaint that have nothing to do with standard transactions under HIPAA. Opp. at 3 (citing ¶¶ 3–5, 144).[2] To be clear, there are 12 enumerated standard transactions under HIPAA, each of which relates to seeking

---

[1] Even if Plaintiffs' group allegations were sufficient to state a claim against a drug manufacturer, claims against DPT should still be dismissed because neither Plaintiff alleges to have visited the website identified as connected to a DPT product, *rhofade.com*. *See* Compl. ¶¶ 4, 16–29.

[2] Plaintiffs double down on their cherry-picked summary of HHS guidance (Opp. at 3), ignoring that, as noted in the Motion, it states that even when a "pharmaceutical manufacturer . . . is a health care provider[,] [it] is only a covered entity . . . if it conducts standard transactions." Mot. at 9 (citing 65 Fed. Reg. 82,462, 82,569 (Dec. 28, 2000)).

coverage from, or getting paid by, insurance. 45 C.F.R. § 160.103. Plaintiffs have not alleged that Defendants engaged in any of them or attempted to use Plaintiffs' information in connection with insurance coverage, which would be required to be covered by HIPAA.

Plaintiffs, without citation, claim that the standard transactions listed in § 160.103 are a "non-exhaustive list" (Opp. at 3), but it is an exhaustive list unless the list is adjusted "by regulation." 45 C.F.R. § 160.103 (transaction definition). In addition, these transactions must be electronic and must adhere to certain transmission standards.[3] Plaintiffs point to allegations that Defendants offered "Patient Portals," dosage guidance, and access to healthcare providers. Opp. at 3–4. But none of these are standard transactions, and the Complaint does not allege that either Plaintiff used a portal, received dosage guidance, or interacted with a healthcare provider through the Doryx or Imvexxy websites. Compl. ¶¶ 16–29.

In addition, there are no allegations that Defendants provide health care (i.e., "care, services, or supplies related to the health of an individual") in connection with the allegations in the Complaint. 45 C.F.R. § 160.103 (health care definition). Any member of the public can access these websites and download the savings cards without any consultation or services being provided by Defendants. That Defendants are pharmaceutical manufacturers is irrelevant because "drug . . . manufacturers are not health care providers simply by virtue of their manufacturing activities." 65 Fed. Reg. 82,462, 82,568 (Dec. 28, 2000).

Finally, Plaintiffs' fallback theory—that Mayne somehow "recognizes" that it is a covered entity because its privacy notice "adhere[s] to *applicable* privacy laws and regulations including [HIPAA]" (Opp. at 4 (emphasis added))—is equally meritless. The privacy notice merely states that Mayne adheres to laws that may apply to it, including, for example, the European General Data Protection Regulation ("GDPR"), not that these laws always apply. Certainly, Plaintiffs could not seek to vindicate GDPR rights just because it is listed in a privacy policy. The same is true for HIPAA. HIPAA-covered-entity status is determined by 45 C.F.R. § 160.102. In this case, Plaintiffs

[3] *See Transactions Overview*, CMS (Mar. 16, 2026, 6:53PM), https://www.cms.gov/priorities/key-initiatives/burden-reduction/administrative-simplification/transactions.

correctly assert that Mayne adheres to applicable laws, "including" HIPAA, and under HIPAA Mayne is not a Covered Entity, which means that Plaintiffs' ECPA claims are meritless.

2. *Plaintiffs Did Not Transmit Individually Identifiable Health Information.*

Even if Defendants were covered entities—which they are not—the data allegedly collected from the websites does not constitute IIHI. Plaintiffs cite to "[n]umerous" decisions where the courts held "the fact that an individual is prescribed a certain medication constitutes IIHI under analogous circumstances." Opp. at 4–5. But as Plaintiffs acknowledge, each of the cases they cite involved a patient taking an action with a covered entity that led to an undisputed disclosure that the patient had a prescription or other medical information. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) (ordering specific prescriptions through pharmacy website); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885 (C.D. Cal. 2024) (purchasing specific healthcare products through pharmacy's website); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4–5 (D. Or. Nov. 14, 2024) (searching for specialists and treatment information on hospital's password-protected patient portal); *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *2–3 (W.D. Wash. Aug. 29, 2025) (scheduling appointments and completing addiction evaluations through provider's website).

Contrary to Plaintiffs' unfounded assertion (*see* Opp. at 4), downloading a savings card does not indicate that the downloader was prescribed the drug, purchased it, had the condition, or any other information that could constitute IIHI. The Doryx and Imvexxy websites are publicly accessible. Plaintiffs do not allege they were required to register, log in, disclose a medical condition, or enter any personal information that could identify them, their condition, or their prescription to download a savings card. Anyone with internet access can visit these websites and download a savings card. Mot. at 2. Defendants had no way to know Plaintiffs' subjective reason for downloading the savings card, so their anonymous click cannot constitute IIHI. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. June 20, 2024) (striking down HHS guidance that sought to treat metadata from visitors to public hospital websites as IIHI despite the website owner having no knowledge of the visitor's subjective motive).

Plaintiffs mischaracterize Defendants' IIHI argument, which is not based on a distinction between a public website and a patient portal. Opp. at 5; Mot. at 8–11. No IIHI was transmitted here because Plaintiffs never communicated any health information. The public accessibility of the websites is relevant as the factual basis for the conclusion that there is nothing of substance to the transmission: Plaintiffs did not submit any IIHI via a portal, a form, a purchase, or a search query. The cases Plaintiffs cite in response to this argument do not "resoundingly reject" it. Opp. at 5. Those courts found IIHI only because plaintiffs took an affirmative action on the website that communicated IIHI. *See Costco*, 2024 WL 4785136, at *6 (ordering prescriptions); *Walgreen Co.*, 733 F. Supp. 3d at 885, 893 (purchasing specific healthcare products).[4] That is not alleged here.

Plaintiffs further argue that Defendants' disclosures violated the Connecticut Data Privacy Act and the Texas Data Privacy and Security Act—statutory allegations that do not appear as causes of action in the Complaint. Opp. at 6. And as to Plaintiffs' common law tort predicates, those claims independently fail for the reasons set forth in Section III below.

3. *Plaintiffs Failed to Allege a Criminal or Tortious Purpose Separate From the Predicate Interception.*

Setting aside the absence of any viable HIPAA or statutory predicate, the crime-tort exception does not apply because Plaintiffs have not alleged a tortious or criminal purpose that is ***separate and distinct*** from the interception itself. As Defendants' Motion explained, the crime-tort exception requires that the interception be "for the purpose of committing any criminal or tortious act" that is independent of the interception. 18 U.S.C. § 2511(2)(d); Mot. at 6–8.

Plaintiffs attempt to recast *Sussman v. ABC* to support their argument that the purpose of Defendants' alleged interception was tortious or criminal. Opp. at 7 (citing 186 F.3d 1200 (9th Cir. 1999)). But, in *Sussman*, the Ninth Circuit held that the crime-tort exception did not apply precisely

[4] Plaintiffs also argue that "social media identifiers have been uniformly found to constitute personally identifiable information in analogous Tracking Tool litigation," pointing to Google's "cid" and "sid" cookies as evidence that the data transmitted here was personally identifiable. Opp. at 5. But PII is not IIHI, which requires the information "relate[] to the . . . health or condition of [or] provision of health care to an individual." 45 C.F.R. § 160.103.

because the defendant's purpose was lawful, even if the means of obtaining the footage were not. 186 F.3d at 1202–03. Yet here, neither Defendants' means—the use of so-called "Tracking Tools"—nor the purpose—to allegedly share data with third parties—is unlawful. Plaintiffs' argument as to the unlawfulness of the disclosure turns on the sharing of "Sensitive Health Information" to third parties. Opp. at 7–8. But as explained above, *see supra* Section II(A)(2), Plaintiffs have not sufficiently pled that such information was shared with third parties, because Plaintiffs have not sufficiently pled that they transferred it to Defendants in the first place.

Further, Plaintiffs do not allege that Defendants intercepted data and then *used* it to commit an independent wrong. *See Costco*, 2024 WL 4785136, at *5–6. Here, Plaintiffs allege no such separate intended unlawful use other than the disclosure of the data to third parties. Opp. at 7–8. That is the circularity that courts reject as insufficient to invoke the crime-tort exception. *See* Mot. at 7; *Nichols v. PeaceHealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (dismissing wiretap claim because alleged interception for advertising was insufficient to establish a tortious purpose separate from the interception).

Plaintiffs also rebut an argument Defendants never made, namely that a commercial motive insulates them from liability under the crime-tort exception. Opp. at 8–9. Rather, Defendants argue that Plaintiffs failed to allege any tortious or criminal purpose that is separate and distinct from the interception itself. Mot. at 7–8. Because Plaintiffs have not alleged a tortious purpose separate from the interception, the crime-tort exception cannot apply regardless of how Plaintiffs characterize Defendants' motive. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

**B. Plaintiffs Do Not Allege the Interception of "Contents" of Communications.**

Plaintiffs fail to allege that the "contents" of their communications were intercepted (Mot. at 11-12), but rather than engage on the substance, Plaintiffs wrongly assert that "Defendants argue that the fact that the Pharmaceutical Websites are 'publicly accessible' is 'dispositive.'" Opp. at 9. Defendants make no such argument. Mot. at 11–12. The ECPA's "contents" threshold requires an interception of information with "substance, purport, or meaning." *Id.*; 18 U.S.C. § 2510(8). The

public nature of the websites is relevant because it explains why Plaintiffs fail to allege they had substantive communications with the website to intercept—anyone could visit these websites and download a savings card, without providing any personal information, identifying themselves as a patient, or communicating anything about their health conditions. Mot. at 2, 12.

Plaintiffs' cited cases confirm this distinction. In *Costco*, *Walgreen*, and *ChoicePoint*, each plaintiff did something on the website that affirmatively communicated individualized health information: a Costco pharmacy customer searched for and purchased specific prescription medications through a pharmacy website; a Walgreens customer purchased a diabetes test kit and Monistat through a retail pharmacy website; a ChoicePoint patient scheduled appointments for addiction treatment and completed online addiction severity evaluations through a medical provider's website. *Costco*, 2024 WL 4785136, at *6; *Walgreen*, 733 F. Supp. 3d at 885, 893; *ChoicePoint*, 2025 WL 2495079, at *2–3. In each case, plaintiff's actions communicated "substance, purport, or meaning"—an ordered prescription, a specific purchase, or a specific medical appointment. Here, Plaintiffs communicated nothing of the sort. They clicked a publicly available download link without registering or logging in, and made no purchase.

Plaintiffs further argue that "[s]imilar allegations have been found sufficient to show 'content' disclosures actionable under the ECPA." Opp. at 10. But each case Plaintiffs cite involved plaintiffs who communicated personal information through affirmative *search* queries. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *1, *4 (N.D. Cal. Apr. 4, 2025) (finding CIPA allegations sufficient where tracking tools transmitted users' search queries, purchase activity, and personal identifiers entered during purchases); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 16, 2025) (collected full-string URLs reflecting plaintiffs' "*search queries* and specific items" viewed); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893 (S.D. Cal. 2025) (plaintiff "*search[ed]* for prescription medications" and entered search terms).

Indeed, the *Zarif* court, when explaining the Ninth Circuit's holding in *Zynga*, emphasized the importance of "searches" when determining whether "content" is at issue. *Zarif*, 789 F. Supp. 3d at 893 ("The Ninth Circuit reasoned this information was record information because it included

'only basic identification and address information, not a search term or similar communication made by the user.'" (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014)).

## III. PLAINTIFFS' COMMON LAW CLAIMS ALL FAIL

### A. Plaintiffs' Negligence Claim Is Not Well-Pled.

#### *1. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim.*

Plaintiffs argue that the economic loss doctrine does not bar their negligence claim insofar as their alleged harms are "non-economic" injuries because (1) they suffered a "loss of control" over their personal information, and (2) they suffered "the accompanying impairment in value" of that information. *Id.* Both theories fail.

Plaintiffs' claimed harms include emotional distress, diminution in value of personal information, and loss of the benefit of the bargain. Compl. ¶ 14. Plaintiffs' attempt to recast these harms as "non-economic" by invoking the concept of "loss of control" over personal information does not withstand scrutiny. The case Plaintiffs cite for this proposition involved sensitive personally identifiable information—name, address, phone number, email address, date of birth, driver's license number, passport number, and military identification number—information not at issue here. *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1185 (D. Nev. 2022). And the "loss of control" was based upon "dissemination" of this information—*i.e.*, the allegation that "the stolen PII has been posted on the dark web for purchase," an allegation not present here. *Id.* Plaintiffs' reliance on *Mountain West Helicopter, LLC v. Kaman Aerospace Corp.* is equally misplaced. *Mountain West* involved actual physical damage to tangible property—a defective clutch that caused helicopters to crash—and the court applied the "other property" exception, holding that "when the plaintiff alleges other property damage, the economic loss rule does not apply." 310 F. Supp. 2d 459, 466–67 (D. Conn. 2004). Plaintiffs cite no case that extends the "other property" exception to informational "loss of control."

Because Plaintiffs never transmitted any sensitive information through the websites, they cannot claim any "loss of control" over information they never surrendered. Nor can they claim "the accompanying impairment in value" of that information because there is no impairment to the

value of information that was never disclosed in the first place. The economic loss doctrine, therefore, bars Plaintiffs' negligence claim under both Nevada and Connecticut law.

*2. Defendants Had No Duty to Protect Plaintiffs' Information.*

Plaintiffs argue that Defendants had a duty to protect their "Sensitive Health Information" under HIPAA, other privacy statutes, and tort law. Opp. at 11–12. This argument fails. *See supra* Section II(A)(1), (2). The cases Plaintiffs cite apply inapplicable state law and are distinguishable because, in each, plaintiff transmitted substantive personal information to defendant. *See Smallman*, 638 F. Supp. 3d at 1186 (data breach case where plaintiffs "paid MGM for services"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1045 (N.D. Cal. 2025) (applying California law where intercepted communications included sensitive financial and personal information); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 776 (N.D. Cal. 2019) (applying California law where Facebook shared users' private photos, videos, and personal views). Here, Plaintiffs clicked a public link that required no disclosure of any information.

*3. Defendants' Alleged Breach Did Not Cause Plaintiffs' Cognizable Injury.*

Plaintiffs argue that they suffered benefit of the bargain damages, diminution of value damages, and invasion of privacy. Opp. at 12–14. None of these alleged injuries is sufficient to sustain a negligence claim on the facts pled here. As to benefit of the bargain, Plaintiffs claim they "would not have used the websites, or would have paid substantially less for those services." Opp. at 19. But Plaintiffs received a free savings card while providing nothing substantive in return except data to help them understand usage of their website. Mot. at 2.

As to diminution of value, Plaintiffs offer only the conclusory assertion that their "Sensitive Health Information has financial value" and that Defendants' alleged disclosure diminished that value. Opp. at 13. But to allege diminution in value, a plaintiff must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020). Because Plaintiffs never transmitted any sensitive health information through the websites in the first place, there is no information that could have had its value diminished.

As to invasion of privacy, this theory is derivative of Plaintiffs' standalone invasion of privacy claim, which independently fails for the reasons set forth in Section III(B) below.

**B. Plaintiffs' Invasion of Privacy Claims Are Not Well-Pled.**

*1. Plaintiffs Do Not Plausibly Allege Intrusion Upon Seclusion.*

Contrary to Plaintiffs' assertions (Opp. at 14–19), the intrusion upon seclusion claim fails for each of the reasons identified in Defendants' Motion. Mot. at 15–17. *First*, there was no intrusion. Defendants did not enter any private space; instead, Plaintiffs navigated to Defendants' public websites and downloaded a savings card. *Id.* at 15. Plaintiffs' citations to *Goosen* and *Jackman* (Opp. at 15) miss the mark. Both cases involved neighbors physically surveilling each other in their private homes and yards. *Goosen v. Walker*, 714 So. 2d 1149, 1150 (Fla. Dist. Ct. App. 1998); *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 657 (Fla. Dist. Ct. App. 2021). Plaintiffs' "facilitated intrusion" cases are equally inapposite. Opp. at 16; *see M.H. v. Done Global*, 2025 WL 629613, at *1 (N.D. Cal. Feb. 26, 2025) (telehealth company transmitted sensitive health information of identified patients through the website); *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *2 (N.D. Cal. Feb. 17, 2026) (defendant had actual knowledge it was "aiding and abetting" an unauthorized disclosure after tracking users who had opted out). A drug manufacturer collecting basic data about website usage is not offensive under any case cited by Plaintiffs.

Plaintiffs' reliance on Arizona and California case law is similarly unavailing. Opp. at 15. *McCulley* and *Lau* found that plaintiffs' disclosure of search terms revealing medical conditions, not a passive click on a public link, was sufficient to support a finding of liability. *See supra* Section II(B); *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *30–31 (D. Ariz. May 10, 2024); *Lau v. Gen Digit., Inc.*, 2024 WL 1880161, at *2 (N.D. Cal. Apr. 3, 2024).[5]

*Second*, Plaintiffs had no reasonable expectation of privacy. The websites are publicly accessible without any login, registration, or authentication requirements. Mot. at 16; *see W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *10 (M.D. Fla. Mar. 6, 2025) (dismissing intrusion

[5] *Opperman v. Path, Inc.* involved theft of plaintiffs' private cellular address books and consent obtained by misrepresentation, 87 F. Supp. 3d 1018, 1060, 1061 (N.D. Cal. 2014).

claim because browsing activity on a publicly available healthcare website does not constitute intrusion into "private quarters" under Florida law); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) (holding it is "not objectively reasonable to expect" privacy over communications on a public website). Plaintiffs attempt to distinguish *Orlando Health* by arguing that post-*Orlando Health* case law recognizes intrusion claims involving health information. Opp. at 17. Yet, as explained above, Plaintiffs did not disclose any "private health information." *See supra* Section II(A)(2).

For the same reason, the alleged conduct is not "highly offensive." *Walgreen* involved a HIPAA-covered pharmacy where customers purchased sensitive healthcare products. 733 F. Supp. 3d at 893. That is not the case here.

*2. Plaintiffs Do Not Plausibly Allege Public Disclosure of Private Facts.*

Plaintiffs argue that their public disclosure claim survives because Plaintiffs "transmitted . . . Sensitive Health Information," or, alternatively, "enrolled in the savings program for prescription medication (Doryx and Imvexxy) used to treat a specific health condition." Opp. at 19. But Plaintiffs did not "enroll" in any such program. Instead, as Defendants' Motion explains, they downloaded a pdf savings card, available to anyone. Mot. at 17. As to publicity, Plaintiffs cite public statements by Google's CEO to argue that transmitting analytics data to Google and Facebook satisfies the "publicity" requirement because those companies aggregate user data and make it available to advertisers. Opp. at 20. But the scale of Google's advertising networks is irrelevant to whether Plaintiffs' anonymous click data was disclosed to "the public at large" such that it is "substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. As to highly offensive conduct, Plaintiffs' public disclosure theory fails for the same reasons as their intrusion upon seclusion theory. *See supra* Section III(B)(1).

**C. The Breach of Confidence and Fiduciary Duty Claims Are Not Well-Pled.**

Plaintiffs argue that Defendants owed them duties of confidence and fiduciary duties because the websites "function as healthcare providers." Opp. at 21. But the cases Plaintiffs cite require actual healthcare providers or health insurers that have a genuine patient or member

relationship, which are not the facts in this case. *See Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *1 (S.D.N.Y. June 25, 2025) (telehealth company); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *1 (S.D.N.Y. Mar. 23, 2021) (not-for-profit corporation operating a network of hospitals and healthcare providers); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 145 (D. Mass. 2024) (healthcare services company operating hospitals and healthcare facilities); *Adair v. CIGNA Corp. Servs., LLC*, 818 F. Supp. 3d 641, 652 (E.D. Pa. 2026) (health insurance provider). Defendants are not HIPAA-covered entities. *See* Section II(A)(1). Downloading a savings card creates no relationship between the Plaintiffs and the Defendants, and therefore precludes the creation of any duties, including a fiduciary duty or a duty of confidentiality.

**D. Plaintiffs' Breach of Implied Contract and Unjust Enrichment Claims Fail.**

Plaintiffs argue that an implied contract arose where Plaintiffs "applied for" and obtained a savings card. Opp. at 22–23. Yet, Plaintiffs did not "apply" for anything. Downloading the savings card did not create a relationship between the Plaintiffs and Defendants. The technical requirements of contract formation remained unmet. Mot. at 23. The free download of a publicly available savings card does not constitute the kind of exchange from which a contractual obligation to protect personal data can be implied.

Plaintiffs argue that their unjust enrichment claim survives because Defendants "profited" from Plaintiffs' sensitive health information. Opp. at 23–24. This argument fails for the same reason as every other common law claim: Plaintiffs did not provide any sensitive health information to Defendants. This threshold fact distinguishes this case from the cases Plaintiffs cited, and it is the absence of such sensitive information that makes it impossible for Plaintiffs to have conferred a benefit on the Defendants. Mot. at 24. In fact, Plaintiffs instead *received* a benefit "by being able to use the Website." *Williams v. TMC Health*, 2024 WL 4364150, at *9 (D. Ariz. Sept. 30, 2024). Accordingly, Plaintiffs' unjust enrichment claim must be dismissed.

**CONCLUSION**

Defendants request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: May 22, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Daniel E. Raymond*

Daniel E. Raymond (*pro hac vice*)
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: 312-583-2379
Fax : 312-583-2360
Email: daniel.raymond@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
David B. Schwartz (*pro hac vice*)
Jami Vibbert (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
Tel: 212-836-8000
Fax: 212-836-8689
Email: david.schwartz@arnoldporter.com
Email: jami.vibbert@arnoldporter.com

DICKINSON WRIGHT PLLC
Michael N. Feder
Nevada Bar No. 7332
Gabriel A. Blumberg
Nevada Bar No. 12332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Tel: 702-550-4400
Fax: 844-670-6009
Email: mfeder@dickinsonwright.com
Email: gblumberg@dickinsonwright.com

*Attorneys for Defendants Mayne Pharma Commercial LLC, TherapeuticsMD, Inc., and DPT Laboratories, Ltd.*

## CERTIFICATE OF SERVICE

I certify that I am an employee of DICKINSON WRIGHT PLLC and that on May 22, 2026, pursuant to Federal Rule of Civil Procedure 5(b), I served a true and correct copy of **DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT** on the parties through the Court's CM/ECF e-filing system and via email to the following:

Sonjay C. Singh (*pro hac vice*)
Tyler James Bean (*pro hac vice)*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 212-532-1091
Email: ssingh@sirillp.com
Email: tbean@sirillp.com

Mona Amini
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, NV 89113
Tel: 800-400-6808
Fax: 800-520-5523
Email: mona@kazlg.com

*Attorneys for Plaintiffs N.O. and H.H.*

*/s/ Daniel E. Raymond*
Attorney for Defendants Mayne Pharma Commercial LLC, TherapeuticsMD, Inc., and DPT Laboratories, Ltd.